## VANDALIA COAL CO. et al. v. SPECIAL COAL AND FOOD COMMISSION OF INDIANA et al.

(District Court, D. Indiana. November 27, 1920.)

No. 359.

1. **Commerce ⊙◡60(1), 79—Temporary injunction against interference with interstate commerce; regulation of sale of coal for delivery outside state, interference with commerce by coal commission.**

   The Indiana Coal and Food Commission Law and orders issued thereunder, requiring coal mines which had contracted to deliver their coal outside the state to sell the same to concerns within the state, is an interference with interstate commerce, and an interlocutory injunction will issue against its enforcement.

2. **Constitutional law ⊙◡154(1)—Coal commission orders, impairing existing contract obligations of producers, enjoined.**

   Orders of the Indiana special coal and food commission, requiring coal mines to deliver coal to specified concerns within state, which impair contract obligations of coal mines which had otherwise contracted for their output, are unconstitutional, and will be temporarily enjoined.

3. **Mines and minerals ⊙◡93½, New, vol. 11A Key-No. Series—Coal commission cannot require owner to sever coal from land.**

   Indiana Special Coal and Food Commission Law does not empower the commission to require a coal landowner to sever the coal from the soil.

4. **Mines and minerals ⊙◡93½, New, vol. 11A Key-No. Series—Coal commission orders to ship coal to specified concerns enjoined.**

   Orders of the Indiana coal and food commission, requiring coal mines to ship carloads of coal to parties of whose credit they had no information, will be temporarily enjoined, where no provision is made for supplying cars to the mines, and no information given regarding the credit standing of the proposed consignees.

5. **Mines and minerals ⊙◡93½, New, vol. 11A Key-No. Series—Coal commission's threats to enforce penalties a sufficient basis for injunction.**

   Where the Indiana special coal and food commission publicly threatened to exact penalties from coal mines disobeying their orders, such action will be temporarily enjoined, since the act contains no definite assurance that penalty prosecutions will be postponed pending appeal proceedings.

In Equity. Bill by the Vandalia Coal Company and the Vigo Coal Products Company against the Special Coal and Food Commission of Indiana, James P. Goodrich, Otto L. Klauss, and Jesse E. Eschbach. Interlocutory injunction granted.

Cooper, Royse, Bogart & Gambill, of Terre Haute, Ind., and Whitcomb & Dowden and Charles Martindale, all of Indianapolis, Ind., and George Sutherland, of Salt Lake City, Utah, for plaintiffs.

Ele Stansbury, James W. Noel, and Howard S. Young, all of Indianapolis, Ind., for defendants.

Before BAKER and PAGE, Circuit Judges, and ANDERSON, District Judge.

BAKER, Circuit Judge. Conceding to the state the general power to take control, from time to time, of businesses which, prior to such times, have been purely private, by reason of change of circumstances, by reason of the existence of facts showing that such a state of wrong

⊙◡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

has arisen in that business that the safety and welfare of the people of the state demand intervention by way of regulation, and granting also to the state the benefit of the presumption that a statute is valid until the contrary is shown, we will pass to the final hearing any considerations that may be advanced by the complainants to show that no facts existed which justified the finding of necessity of intervention on the part of the state; the state being free, of course, to meet and combat such a showing.

On the question whether the remedy prescribed by the Legislature has any proper bearing on the supposed evil, we will grant to the state the benefit of assuming that on the face of the statute the remedy proposed has the necessary connection with the supposed evil.

As to the real facts of the operation of such remedy, whether it is workable, we will pass that matter, also, until the full facts can be developed on final hearing.

On the showing that has been made to-day we are all of the opinion that an interlocutory injunction should be issued, for the following reasons:

[1] First. That the operation of the statute, as indicated by the orders of the commission, is a direct interference with interstate commerce. When the coal is severed from the ground it becomes an article of commerce, and the owner of that commodity, under the commerce clause of the federal Constitution (article 1, § 8), which recognizes no state lines, has the right, so far as the state is concerned, to sell and to contract to sell his entire output to citizens of other states. The orders are also an interference with interstate commerce by reason of the showing in the bill that the output of three of the five mines that are being operated by the complainants had been contracted to the Pennsylvania Company, an interstate carrier, under a contract meeting the approval of the Interstate Commerce Commission, which approval carries an implied finding of fact that the coal, so used, is directly consumed in, or in aid of, interstate commerce.

[2] The second ground for granting the temporary injunction is that the action of the commission impairs the obligation of pre-existing contracts. Our conception on that point is this: That there is a distinction to be made between the contract of a carrier, or other public utility, which at the time of making the contract is of that public character, and by making the contract when it bears that character the carrier knowingly is making it subject to the power then existing to change the rate or make other requirements that are inconsistent with that contract; and, on the other hand, the contract of a business enterprise that had the standing of a purely private enterprise until the time had arrived when for the first time the state had declared that it was affected with a public interest. Taking the insurance company rate case as an illustration of that, we conceive that all policies at the old rate remained in force, and were of an absolutely binding nature, after the passage of the legislation which brought the private business of insurance into the public regulable class. To hold otherwise, in our judgment, would be to give the legislation, which should be presumed to be prospective, a retroactive effect.

[3] The third ground for granting the temporary injunction is that the orders, and the scheme of administration apparently adopted by the coal commission, requires the owner of coal land to sever the coal from his soil. That is a power beyond any that the state has professed to exert in this legislation, even if, under any circumstances, or at any time, the state would have the right to order the owner of a purely private title to sever the coal from his soil.

[4] The fourth ground for granting the injunction is that, assuming that there might be some residue after the demands of existing contracts and of interstate commerce were satisfied, the orders of the commission direct the complainants to make shipments of carloads of coal. The showing by the complainants is that the Indiana coal contains a large amount of sulphur, and that it cannot be safely stored at the mine; that if stored there, or anywhere else, it would be likely to be destroyed by spontaneous combustion; that it requires quick and prompt handling, and quick and prompt consumption by the users, and requires that cars be available at the mouth of the pit, into which the coal can be placed.

Neither the act nor the plan of operation of the commission makes any provision for the supplying of cars to complainants, or other operators, by which they could comply with the mandatory direction.

A further reason that affects the orders as to this supposititious surplus that might remain after interstate commerce and contract parties have been satisfied, is that the showing of the complainants demonstrates that the necessities of transporting this coal are such that it is impossible to get bills of lading, and to collect by the well-known method of bank collection, by means of sight drafts attached to bills of lading, and that without such security, or any security, the complainants are required to ship to parties whom they declare to be unknown to them, and of whose credit they have no information, and are given no information.

Of course, if the complainants are required to part with this coal, and not to receive compensation therefor, it would be a case, in that respect, and to that extent, of pure confiscation.

[5] There is a fifth ground for granting the temporary injunction, in the showing of threats made by the commission to exact the penalties. We should agree with the state that this ground for a temporary injunction, or any injunction, would not be tenable if we were enabled to read section 11 of the act with the same understanding that counsel for the state and the coal commission put upon it; but, as we read that section, we find no definite assurance that penalties, or prosecutions for penalties, will be suspended a day longer than the final decision in the Marion circuit court. There is no direct and clear, definite, positive assurance that the penalties, or other penalizing means, would be held in abeyance until the question had been carried to the highest court to which it can be carried.

On the present showing of the bill, the complainants have existing arrangements by which their interstate business will consume their entire output. They have three mines that are taken entirely out of the case.

As to the other two mines, the allegations of the bill are that their output would· be consumed in the interstate commerce that they have, and so all of the orders will be restrained as to these complainants, on the facts alleged in their bill, and the question is left open for the complainants to adduce evidence of a situation—and for the state to meet—as to the existence of any facts on which the Legislature could make any finding at all of such oppressions or wrongs as would justify the classing of the business as one subject to regulation, giving the state the plain benefit that it has had heretofore of the presumption of validity, together with the holding that there is such a continuing, general police power, that was not hamstrung, to use a common expression, by the Fourteenth Amendment, so that no change of circumstances after the adoption of that amendment could be made the basis of the state's exertion of its police power.

For these reasons the temporary injunction to restrain the enforcement of the orders, presented in the bill, will be issued.