## OHIO COLLIERIES CO. et al. v. STUART, Pros. Atty. et al.

(District Court, N. D. Ohio, W. D. March 8, 1923.)

1. **Constitutional law ⚖═46(1)—Expiration of statute may not render question of constitutionality moot.**

   Though a state statute is about to cease effective operation by its own limitation, the question of its constitutionality is not moot, where it imposes penalties for its violation, the right to enforce which survives its active operation.

2. **Constitutional law ⚖═46(1)—Disclaimer of intention to enforce does not bar suit to test constitutionality.**

   Disclaimer by officers of a state of intention to enforce a statute is not sufficient to require dismissal of a suit by parties affected to test its constitutionality.

3. **Commerce ⚖═57—Emergency Act of Ohio of 1922, relating to distribution of mined coal, held unconstitutional, as interference with interstate commerce.**

   Emergency Act Ohio Sept. 12, 1922, providing for retention within the state of all coal mined therein and its sale for domestic consumption at prices fixed by a fuel administrator, *held* unconstitutional, as an interference with interstate commerce and in conflict with the federal act of September 22, 1922, providing for interstate distribution of coal.

In Equity. Suit by the Ohio Collieries Company and another against Roy R. Stuart, Prosecuting Attorney of Lucas County, Ohio, and others. Decree for complainants.

Tracy, Chapman & Welles, of Toledo, Ohio, for plaintiffs.

Marshall & Fraser, of Toledo, Ohio (H. W. Fraser and Percy R. Taylor, both of Toledo, Ohio, of counsel), amici curiæ.

R. R. Zurmehly, of Columbus, Ohio, and Frank E. Calkins, of Toledo, Ohio, for defendants.

KILLITS, District Judge. In this case the constitutionality of the Emergency Act of September 12, 1922, passed by the Legislature of Ohio to relieve the coal situation, is attacked. The complainants are, respectively, a coal-producing corporation operating an extensive system of mines within the state of Ohio, and a corporation having a subsisting contract with the operating company for the marketing of the latter's product. The defendants are the agencies of the state, empowered by the act to enforce its provisions. By the terms of the act, its active life was limited to a period expiring March 31, 1923. The case was first presented to this court on an application for temporary injunction and heard by a bench of three judges, constituted under the provisions of the Clayton Act (38 Stat. 730). After the submission of this motion, but before any consultation was had by the members of the court, by proclamation the Governor of Ohio dissolved the organization effected under the terms of the act for the control and distribution of coal within the state and the measure has not since been operative. The motion for temporary injunction, therefore, has never been passed upon by the bench as constituted at the time of its submission. By agreement of parties, a final submission of the merits was had, which is subject to the consideration of the sitting District Judge alone. The engagements of the judges sitting in the hearing

---

⚖═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of the motion for temporary injunction have not permitted opportunity for consultation or exchange of views as to the merits of the case. What follows in this opinion should be understood as reflecting the conclusions, only, of the judge whose work it is.

[1] At the outset, we are confronted with the thought whether the circumstances referred to have not made a moot case out of the questions before the court, wherefore no further proceedings than a dismissal of the complaint should be had. This position the defendants take. We have also a disclaimer on the part of the officers of the state of any intention to enforce the provisions of the act. While the measure has yet but a brief period of existence for its practical operation, nevertheless there are written into it penalties for nonobservance or for violations of its provisions, and one guilty of such dereliction is subject to processes which survive the expiration of the statute's operative period. It follows that in this respect the case comes within the principle of the decision in Southern Pacific Terminal Co. v. Interstate Commerce Commission, 219 U. S. 498, 31 Sup. Ct. 279, 55 L. Ed. 310, and of the cases therein cited.

[2] Assuming that the statute is valid, this case cannot fail because of the assurance, made for the purposes of the case, that the authorities controlled and directed by it will not cause its provisions to be enforced. Simpson v. Union Stock Yards Co. (C. C.) 110 Fed. 799. Although for the time being the statute's operation is in abeyance, pursuant to the Governor's proclamation, it is still within that officer's power to revive it, and to subject the complainants to the inquisitions which are made subjects of enactment therein, as complainants are of the class upon which penalties by the terms of the statute may be inflicted through the attempt to conduct such inquisitions. These penalties, as we have noted, are enforceable after the termination of the statute's validity as an operating measure.

[3] We are forced to hold, therefore, that the complainants' right to the final consideration of this case is not determined by the failure of the authorities of the state to press the act. The case has been submitted on its merits on issues made up by appropriate pleadings and evidence undenied of the purpose, existing at the time of complaint, of the state of Ohio through its proper officers to enforce the act. It does not seem necessary to set out the act in full or to recite very extensively its provisions. Plainly, it was enacted to provide for the retention within the state of coal mined therein, to be reserved, through the efforts of those under the direction of the act, for consumption by the people of Ohio. Every detail of the act either points to that purpose or outlines the machinery to effect such a result, and one of the defendants is the administrator appointed by the Governor to fill the office created by the legislation.

It is complained by the plaintiffs that the act is unconstitutional under the inhibitions of the federal Constitution: First, that it attempts to regulate and is an interference with interstate commerce, and covers a feature of legislation in which the federal government has priority when once Congress legislates on the same subject; second, that it impairs the obligation of contracts; third, that it deprives plaintiffs

of property without due process of law and takes private property of plaintiffs for public use without just compensation, denying in the operation equal protection of the laws. It is also claimed that the act contravenes several provisions of the Constitution of the state of Ohio. If these objections are good respecting the Constitution of the United States, the relief prayed for should be granted. It should be noticed that the statute concerns mined coal, and we assume that it will not be disputed that mined coal is pre-eminently an article of interstate commerce. Therefore there is directly applicable to this situation the Gas Cases (West v. Kansas Natural Gas Co.) decided in 221 U. S. 229, 31 Sup. Ct. 564, 55 L. Ed. 716, 35 L. R. A. (N. S.) 1193.

Ten days after the passage of this act, Congress legislated on the same subject (42 Stat. 1025), manifestly for the purpose of reaching the same evils towards which the state legislation is directed; the federal act being in the interest of the whole country. This being the legislative situation at the time this case was begun, we are unable to see how it can be successfully maintained that, if the two pieces of legislation come into conflict either in terms or in reasonable operation under their respective provisions, the federal statute must be given exclusive operation, and any threatened enforcement of the state act is subject to a restraining order out of a court of proper jurisdiction, as this is, especially if the several agencies organized under the two classes of legislation are attempting to proceed in inconsistent ways, for the federal legislation dominates. This proposition is so definitely settled that many citations are unnecessary. Houston & Texas Ry. Co. v. United States, 234 U. S. 342, 34 Sup. Ct. 833, 58 L. Ed. 1341; Railroad Commission of Wisconsin v. Railway Co., 257 U. S. 563, 42 Sup. Ct. 232, 66 L. Ed. 371, 22 A. L. R. 1086.

That the defendants, when this case commenced, were intending to enforce the Ohio act to a result substantially inconsistent with the purpose of the federal act as it was then being administered, and that the plaintiffs were under the threat of conditions which would deprive them of privileges given by the federal act in the marketing of an article of interstate commerce, there is no room for question. The federal administrator, acting pursuant to authority, fixed the mine price of coal produced by plaintiffs at $4.75 per ton, marketable in interstate commerce. The Ohio administrator had first fixed $4 at the mines as the price for the same commodity to be sold to citizens of Ohio, subsequently raising the price, after the commencement of this action, to $4.50, and the record abounds in suggestion that he intended to invoke the machinery of the state statute to compel the plaintiffs to meet his price. The statute is worded to give the administrator power of compulsion in this respect. That this would have been an interference with interstate commerce and an invasion of plaintiffs' rights under the Constitution are propositions too plain for argument. In face of the federal act, as administered, the state statute must give way. Gulf, Colorado, etc., Railroad v. Hefley, 158 U. S. 98, 15 Sup. Ct. 802, 39 L. Ed. 910.

We are unable to see any saving from conflict between the operations of the two statutes in the provisions of section 14 of the state

act to the effect that certain portions of it should not apply to sale of coal in Ohio in interstate commerce, nor to coal coming into Ohio until after it ceases to be a commodity in interstate commerce, because, first, this section exempts only in interstate commerce the provisions of the first 13 sections of the act, whereas much mischief, on the lines suggested, is more than possible to result from attempts to enforce the remaining sections of the act, and for the further reason that, at its best, giving section 14 its broadest operation, the act empowers the state administrator to dictate to the plaintiffs and others similarly situated where and what price may be sold some, at least, of their products, all of which are, by law, freely marketable in interstate commerce, subject only to the restrictions of federal legislation. If the act does not give the state administrator this power, then it is a mere legislative gesture—nothing but a brutum fulmen. It can hardly be said that circumstances could possibly arise where, if the act should be allowed to operate, the plaintiffs would not be compelled to sell some of its product in Ohio at the Ohio price, and thus be deprived of the freedom of commerce to which they are entitled.

We have given reasons enough to amply justify a permanent injunction as prayed for here, without considering the other objections, under the federal Constitution, to the act's validity. We are unable to see any valid distinction respecting the matters presented between this act and that of Indiana, held to be in conflict with the federal Constitution by the District Court of Indiana, a decision by Circuit Judge Baker, in Vandalia Coal Co. v. Special Coal and Food Commission of Indiana, 268 Fed. 572. It is unnecessary to consider other reasons why the statute is unconstitutional. To the mind of this court it plainly is so, because it is an interference with interstate commerce.