No. 13,818.

VAN DEVEGT *v.* BOARD OF COUNTY COMMISSIONERS OF LARIMER COUNTY.

(55 P. [2d] 703)

Decided February 3, 1936.

Mr. FANCHER SARCHET, for plaintiff in error.

Mr. HERBERT M. BAKER, Mr. WINTON M. AULT, for defendant in error.

*En Banc.*

MR. JUSTICE YOUNG delivered the opinion of the court.

THIS case is one in which the petitioner Van DeVegt sought to procure from the county court of Larimer county a writ of mandamus to compel the board of county commissioners of the county to issue a liquor license permitting him to sell liquor in his drugstore situated 700 feet south of the southern city limits of Fort Collins on the Fort Collins-Loveland highway. To reverse the judgment of the county court denying the writ he brings the cause here on error. All italics used in this opinion are ours unless otherwise indicated.

The sections of the liquor code of 1935, being chapter 142, of the Session Laws of 1935, pertinent to our consideration of the matters here involved are as follows:

"Section 1. This Act shall be deemed an exercise of the *police powers* of the State for the protection of the economic and social welfare, the health and peace and morals of the *people of this State,* but no provisions of this law shall ever be construed so as to authorize the establishment or maintenance of any saloon.

"Section 2. On and after the effective date of this Act, *it shall be lawful* to manufacture and sell for beverage or medicinal purposes malt, vinous or spirituous liquors, *subject to the terms, conditions, limitations and restrictions contained in this Act.*

"Section 3. *It shall be unlawful* for any person:

(a) To manufacture, sell or possess for sale any malt,

vinous or spirituous liquors, *excepting in compliance with this Act."*

"Section 8 (b) Upon written demand by an applicant who has been refused a state license said Licensing Authority shall state in writing its reasons for such refusal. The refusal of said Licensing Authority to grant a State license according to the provisions of this Act may be reviewed upon application for writ of certiorari or otherwise, by any court of general jurisdiction having jurisdiction of the place for which the application for license was made, and if such court shall determine that such action was capricious or arbitrary it shall order said State Licensing Authority to issue such license. * * *

"Section 9. The licenses provided by this Act, except where the license fee is to be paid into the treasury of any city, town, city and county or county, shall be issued and granted by the State Licensing Authority, for which the fee is to be paid to the State Treasurer, within fifteen days after the filing of the application therefor. Where the license fee is to be paid into the Treasury of any city, town or city and county, the licenses in this Act provided for shall be issued by the council in a city and county and by the council, board of trustees or licensing authority in any other city or town, where the license fee is to be paid into the treasury of a county, the licenses provided for in this Act shall be issued by the Board of County Commissioners of such county. The council of a city and county and boards of trustees, councils or licensing authorities in any other city or town and the Board of County Commissioners in any county shall have authority to refuse to issue any licenses provided for in this Act for good cause, subject to review by the courts as hereinbefore provided.

"Before granting any license all licensing authorities shall consider the reasonable requirements of the neighborhood, *the desires of the inhabitants,* as evidenced by petitions, remonstrances or otherwise and all

other reasonable restrictions which are or may be placed upon the new district or districts by the council of the city, town, city and county or county or by the Board of County Commissioners of any county.''

''Section 18-A. Liquor Licensed Drug Store License. Liquor licensed drug stores as defined in this Act shall be licensed only to sell malt, vinous and spirituous liquors in seal [sealed] containers not to be consumed at the place where sold.

''Every person selling malt, vinous and spirituous liquors in a liquor licensed drug store shall pay to the State Treasurer a license fee of Fifty Dollars ($50.00) annually in advance for each place where such liquor shall be sold.

''In addition to paying the State license fee herein provided to be paid, every liquor licensed drug store shall pay the following fee to the Treasurer of the city, town, city and county, or county where said liquor licensed drug store is located.

''(a) If said liquor licensed drug store is within any city, town or city and county, an annual license fee of One Hundred Fifty Dollars ($150.00) in advance.

''(b) If said liquor licensed drug store is outside the corporate limits of any town, city or city and county, an annual license fee of Two Hundred Fifty Dollars ($250.00) in advance.''

Section 27 of the act provides for local option and that the operation of the act shall be state-wide unless any city, city and county or incorporated town shall, by a majority of the qualified electors at a general election, or special election called for that purpose, decide against the right to sell liquor or shall limit its sale in such political subdivision as by the act provided.

Such discretion, if any, as is vested in the commissioners with reference to issuing licenses is found in section 9, supra. The respondent board claims there is a discretion to issue, or refuse to issue, vested in it by said section 9. Petitioner says: ''The license issued by

a town or city is a mere incident to the payment of the required fee. Such a license is more in the nature of a receipt for the money.'' We cannot agree with the latter contention. The section provides that ''The Board of County Commissioners in any county shall have authority to *refuse* to issue any licenses provided for in this Act for *good cause,* subject to review by the courts as hereinbefore provided.'' The right to refuse for good cause, of necessity vests in it *in the first instance* the right to determine what is good cause for refusal. The board's disposition of the matter then is subject to review by the courts as provided in section 8b, supra, to ascertain whether its *''action was capricious or arbitrary.''* If the court finds such to be the case, then and then only shall it override the action of the board and order the issuance of the license. This provision of the act is in harmony with the well-recognized rule that resort may be had to mandamus to compel the exercise of authority or discretion vested in an administrative body or board, but courts cannot control or direct how such authority or discretion shall be exercised unless it clearly appears that its action has been capricious or arbitrary. ''Mandamus will not lie to compel the granting of a license where it is not alleged and shown that the exercise of such discretion was arbitrary.'' *Downes v. McClellan,* 72 Colo. 204, 205, 210 Pac. 397.

Capricious or arbitrary exercise of discretion by an administrative board can arise in only three ways, namely: (a) By neglecting or refusing to use reasonable diligence and care to procure such evidence as it is by law authorized to consider in exercising the discretion vested in it. (b) By failing to give candid and honest consideration of the evidence before it on which it is authorized to act in exercising its discretion. (c) By exercising its discretion in such manner after a consideration of evidence before it as clearly to indicate that its action is based on conclusions from the evidence such that reasonable men fairly and honestly consider-

ing the evidence must reach contrary conclusions. ''The intendment of a law which grants discretionary power to licensing officers, whether expressly or by necessary implication, is that the discretionary decision shall be the outcome of examination and consideration; in other words, that it shall constitute a discharge of official duty, and not a mere expression of personal will.'' 19 R. C. L. 968, §265.

In determining whether the action here in question was capricious or arbitrary in any one of the foregoing respects it is necessary to consider the manner in which the controversy arose, the evidence before the board, and its action based thereon. There is no contention that the board refused to receive evidence pertinent to the matter under consideration. The evidence on which it acted is before us in the form of admissions in the pleadings and stipulations between the parties. It is definite and certain. There is no assertion that it was not given fair and honest consideration. The contention is, that upon the evidence before it, and after due consideration, the board reached conclusions therefrom upon which it refused petitioner a license, when reasonable men from a fair and honest consideration of the evidence must have arrived at a contrary conclusion and granted a license accordingly.

The evidence before the board was substantially as follows: That plaintiff, on May 11, 1935, applied for a license to operate a liquor drugstore; that the locus of the proposed liquor dispensary is 700 feet south of the southern boundary of Fort Collins on the main highway to Loveland; that the city of Fort Collins and territory contiguous within a five mile radius has a population of more than 15,000 people; that the qualified electors of Fort Collins number 6,425; that there is no store or other establishment of any description, either retail liquor store or liquor licensed drugstore selling liquor at a point nearer than twelve miles from the southern boundaries of said city of Fort Collins, to wit: at Loveland,

Colorado; that many of said qualified electors who did not desire to have liquor sold within the corporate limits of said city of Fort Collins, do desire to have it sold just outside of said corporate limits and favor the issuance of a license; that said board of county commissioners, since June 25th, 1935, has received petitions signed by several hundred residents of Fort Collins and the immediate vicinity, many of whom are college and high school authorities, asking said board to refuse to grant petitioner said county license; and that said board since June 25th, 1935, has received petitions signed by several hundred residents of the city of Fort Collins and immediate vicinity, many of whom are Fort Collins business and professional men, asking said board to grant a license. With respect to the last mentioned petitions asking for the granting of a license, they contain the names of practically all of the residents outside of the city of Fort Collins and within the immediate neighborhood of the site of the drugstore. It was agreed in open court that the petition to said board of county commissioners, asking that said license be not issued was signed by 422 persons and that the petitions asking that the license be granted were signed by 750 persons. It also was agreed that the petition against the issuance of the license was filed before the formal refusal, and that the petition asking that it be granted was filed after the case was at issue and ready for hearing. The record shows that a second petition against granting the license with 500 names of residents of the neighboring towns of Bellvue and Laporte was filed with the court at the time of trial, but never submitted to the board before its refusal.

The board in its answer to the alternative writ alleged the holding of a local option election by the city of Fort Collins June 25, 1935, and subsequent to the refusal of the board to grant the license, at which out of 6,425 qualified electors, 1,818 voted against, and 574 voted for, the sale of malt, vinous and spirituous liquor, or any of them,

within the city of Fort Collins. This allegation petitioner admitted. The court, on its own motion, struck the allegations concerning such election, over the objection of both petitioner and respondent, the petitioner objecting because more was not stricken and the respondent objecting to striking anything. In their briefs counsel for both parties renew their objections. Respondent asks this court to consider the matters of the local option election and petitions against granting the license, the first petition submitted to the board having 422 signers, and the one offered at the time of trial with 500 signers. Petitioner also urges the consideration of his petition with 750 signers for granting the license filed by him after the case was at issue and at the time of trial. The court refused to consider the petitions filed at the time of trial.

Petitioner alleges that "on and prior to said 11th day of May, 1935, and since said date, he has applied to the Board of County Commissioners * * * for the issuance of a license." This allegation is admitted by respondent. It appears reasonable to us that when the alternative writ was issued commanding the board to issue the license the matter still was in the board's hands. It might, under the alternative writ, adopt one of two courses, issue the license or answer to the court why it had not done so. Until the respondent board filed its answer July 2nd, it still had the right, in the exercise of its discretion, to issue the license or refuse and show cause. So long as the question of the issuance of the license was before it for determination the board had a right to consider, and in fact it was its duty to consider, all the evidence before it bearing on the question presented for decision. By way of illustration, let us suppose that after the filing of an application for a license—which was refused—but before an answer was filed by the board to an alternative writ of mandamus, the applicant should be convicted of a felony. Could not the board set up such conviction in support of its continued

refusal under section 11 (c) which provides that no license shall issue to any person who has been convicted of a felony, even though its first refusal had been arbitrary? The answer necessarily must be in the affirmative. Before it finally acted by filing its answer attempting to show cause why it refused to grant the license, the board had been advised of the result of the local option election, but did not have before it the petitions filed at the time of trial. All the evidence presented prior to the time it answered, the board was bound to consider and doubtless did consider, before again refusing a license and setting forth its reasons for refusal. The board having the right to consider the evidence, but only such as was before it, it clearly was the duty of the court to take it into consideration in determining whether or not the board acted arbitrarily.

Since the matter of the result of the election—stricken by the court—does not rest on the testimony of witnesses upon whose credibility the trial court should first pass, but upon formal stipulations and pleadings, we are as able to judge the effect of the evidence as was the trial court and we shall consider such matters as they appear in the pleadings and the stipulations in arriving at our conclusions.

The petitions signed by 750 voters, which were filed with the court by petitioner *after the issues were made up,* were not presented to or passed on by the board at the time it answered and finally refused the license, and not having been before the board the trial court properly refused to consider them, and they will not be considered here. Had petitioner so desired these petitions could have been secured and presented to the board before bringing the action in mandamus, or before the board had acted finally by answering. Petitioner has no ground upon which to complain that the board acted arbitrarily or capriciously in not granting him a license, when such ground is based on evidence that he never presented to it, and which it never had an opportunity to

consider; neither should the petition filed by respondent at the trial be considered for similar reasons.

■ In our opinion it was the intention of the legislature by passing section 9 of the act to vest a wide discretion in county commissioners with respect to issuing licenses for liquor stores. Petitioner contended in oral argument that the board, in its discretion—if any is vested in it—can go no further than to consider the fitness of the applicant, and the propriety of locating a dispensary at the place proposed. The contention is unsound. The act permits the board to consider "the desires of the inhabitants as evidenced by petitions, remonstrances or otherwise." That these desires may be influenced by the character of the person applying for license, the proposed location, or the character of the business itself cannot be denied. Regardless of their reasons, the desires of the inhabitants are to be considered under this statutory provision. There are many unincorporated towns in the state. If all of the citizens of such a town, save the applicant, were opposed to the granting of a license for the sale of liquor in the town solely on the ground that they were conscientiously opposed to such traffic it could not seriously be contended that their desires so expressed were not a proper subject for consideration by the board, and if proper for consideration when such desires, influenced by dry sentiment, were unanimous, the desires of any part of the citizens, however influenced, evidenced by petitions, remonstrances, or otherwise, likewise are proper for the consideration of the board, to be given such weight as shall be reasonable and as it shall determine.

It will be observed that the statute refers to the "desires of the inhabitants." We are relieved of the necessity in this case of determining or deciding to what geographical section of the state "the inhabitants" shall be limited. Likewise we are not called upon to determine what are the limits of a "neighborhood" within the contemplation of the statute. Both parties submit-

ted petitions signed by residents and citizens of the city of Fort Collins, the one against issuance of a license being signed by 422 residents and presented to the board; the other in favor of the issuance of the license being signed by several hundred of the residents and citizens of Fort Collins and immediate vicinity. Both parties insist that these petitions, filed with the court on the trial by the respective parties, should have been considered by the trial court and should be considered here. In the light of such a record neither party can reasonably object to this court's determination of the case on evidence as to the desires of the inhabitants within the same geographical limits, and which both parties contend was and is competent.

Upon a careful review of the evidence we cannot say that the board exercised its discretion capriciously or arbitrarily, judged by any of the three standards to which we have heretofore called attention. The board did not refuse to receive any evidence offered. It considered the evidence, as is shown by its statements of the reasons for its refusal to grant the license, set forth in its answer to the writ. The evidence shows the location of the proposed dispensary to be in close proximity to, and easily accessible from, the Colorado State College in which 1,200 students are enrolled from all parts of the state. The board alleges in its answer, and it must be held that it concluded, that intoxicating liquors easily accessible in the vicinity of said college would be detrimental to the morals and good conduct of the students, to the administration and conduct of said college, and to the peace and good order of said city and the neighborhood thereof. Petitioner denies these allegations, but we cannot say that the commissioners, in view of the protests admitted to have been made by many of the officials of the college and of the public schools, arrived at an unreasonable conclusion under the evidence, or at least that reasonable men might not draw different conclusions upon a fair consideration of such evidence. If

we concede, as we do, the contention of counsel for petitioner that the court and the board might consider the petitions signed by citizens of Fort Collins and vicinity, presented by both parties, if filed in time, we logically must hold also that the desires of the citizens "otherwise" expressed by their votes in the local option election is likewise admissible evidence to be considered in ascertaining the "desires of the inhabitants," and given such weight as the board deemed proper. We do not hold that the commissioners are bound by the results of such an election; but we do hold it was a circumstance to be considered and weighed with all the other circumstances and evidence in the case.

 Since the law requires that all licenses for which provision is made must be procured before one can lawfully engage in the business, and since a local administrative board is peculiarly fitted to determine whether, under all the surrounding circumstances and in any given community, the granting or refusal of a license will most nearly effectuate the purpose of the act, which is for the "protection of the economic and social welfare, the health and peace and morals," of any given locality in the state, we are not authorized to hold their action arbitrary and capricious where such action is based on evidence from which reasonable men might honestly draw different conclusions. We have held that even a reasonable doubt must be resolved in favor of the action of the board vested with discretion. In *State Board v. Denver*, 61 Colo. 266, 156 Pac. 1100, we quoted the following with approval:

" 'That rule is, that in all matters requiring the exercise of official judgment, or resting in the sound discretion of the person to whom a duty is confided by law, mandamus will not lie, either to control the exercise of that discretion, or to determine upon the decision which shall be finally given. And whenever public officers are vested with powers of discretionary nature as to the performance of any official duty, or in reaching a given

result of official action, they are required to exercise any degree of judgment, while it is proper by mandamus to set them in motion and to require their action upon all matters officially entrusted to their judgment and discretion, the courts will in no manner interfere with the exercise of their discretion, nor attempt by mandamus to control or dictate the judgment to be given. Indeed, so jealous are the courts of encroaching in any manner upon the discretionary powers of public officers, that if any reasonable doubt exists as to the question of discretion or want of discretion, they will hesitate to interfere, preferring rather to extend the benefit of the doubt in favor of the officer.' High's Extraordinary Legal Remedies (3d ed.) §42, p. 50.''

The argument is advanced by respondent that to license what it calls ''fringe stores'' would nullify the act of the people of the town in voting local option. That licensing such stores would have this effect, is not a matter that in and of itself is a bar to the issuance of such licenses, but is merely a circumstance to which the board is entitled to give such reasonable weight as it shall determine. The vote and its preponderance one way or the other is not a controlling factor, but is a circumstance indicative of the desires of the inhabitants of a city within the territory, and which both parties to the cause, by the filing of petitions signed by residents therein, have indicated they believe have a right to express their desires and have them considered.

Counsel for petitioner contends that the liquor code is a mandate to permit the sale of liquor except in local option territory. We do not so construe it. It makes the sale of liquor lawful, ''subject to the terms, conditions, limitations and restrictions contained in this Act.'' Among the conditions imposed are that all licenses required be first secured. §3(h).

We are supported in the foregoing conclusions by the following citations and cases:

*Pitcher v. Albi Mercantile Co.*, 60 Colo. 289, 152 Pac.

894: "Except as the ordinance of the City and County of Denver, No. 223, Series of 1913, may inhibit the issuance of a license to keep a saloon within a specified distance of designated places, the Excise Commissioner is invested with a sound judicial discretion, to be exercised in view of all the facts and circumstances of each particular case, as to granting or refusing a license to keep a saloon, and such discretion will not be interfered with unless it appears it has been abused."

*Downes v. McClellan*, 72 Colo. 204, 210 Pac. 397, was an action in mandamus under section 3992, R. S. 1908, in which the court said: "This statute is not one for revenue only. It is one related to the exercise of the police power and to regulate the businesses enumerated. The power to license in such cases includes the power to refuse a license, even where statutory or preliminary requirements are complied with. 25 Cyc. 603; *People, ex rel. v. Grant*, 126 N. Y. 473, 27 N. E. 964. The power to refuse a license necessarily means having a discretion to grant or refuse, and mandamus will not lie to compel the granting of a license where it is not alleged and shown that the exercise of such discretion was arbitrary. 5 McQuillin Munic. Corp., section 2564; *People, ex rel. v. Grant, supra.* The complaint in the instant case does not state facts sufficient to warrant a peremptory writ of mandamus for the reason that it does not show that the defendants abused their discretion, but on the other hand, that they refused to grant the license on the ground that plaintiff's place of business is a 'public nuisance.' It was therefore error to overrule the demurrer."

Our conclusions are not shaken by the three cases, infra, cited by petitioner.

*Gagen v. City of Louisville*, 145 Ky. 3, 139 S. W. 1061, holds only that an applicant for a saloon license who is refused a license by the licensing board, does not have a ground of recovery against the city for loss of profits while the case is pending on review of the board's action, though finally determined in his favor.

*State ex rel. v. Johnson* (Mo.), 211 S. W. 682. This case arose on the refusal of the county court to grant a license for a pool hall on the ground that the city council had adopted a resolution opposing granting it and that remonstrances were filed. There was no evidence of any reason peculiar to the applicant or location. The court held the refusal arbitrary, but it does not appear that there was any statute authorizing the county court to consider the requirements or desires of the inhabitants as a ground for its refusal. In view of the provisions of our statute this case is clearly distinguishable from the one at bar.

*State ex rel. v. Town of Clendenin,* 92 W. Va. 618, 115 S. E. 583, is a case in which a town council had refused a license to operate a pool hall. One of the grounds of refusal was that the location was not a proper place for a pool hall because it was on the main street of the town; that the inhabitants were largely church going country folk who were opposed to the operation of pool tables where their children would come within the influence thereof; and that by reason of such location it would be detrimental to the welfare and morals of the inhabitants. The court held this not to be a lawful reason for refusal, and that refusal based on such ground was arbitrary. It does not appear that there was any statute authorizing the council to consider, as our statute does, either the requirements of the neighborhood or desires of the inhabitants. The court said: "The policy of our laws is to authorize the operation of such tables as a *revenue measure.*" The avowed object of our act as set forth in section 1, is by the exercise of the *police power* to protect "the economic and *social welfare,* the health and peace and morals of the people of this State." We think it clear that our statute opens a far wider field for evidence, proper for consideration, than the court held to be admissible in the West Virginia case. That case for this reason, is clearly distinguishable from the one here under consideration.

We think the cases cited by Mr. Justice Bouck in his dissenting opinion in support of his theory that the case is "moot" do not justify evasion of responsibility of decision. A case is not moot where interests of a public character are asserted under conditions that may be immediately repeated, merely because the time for a particular order has expired. *Southern Pac. Terminal Co. v. Interstate Commerce Commission*, 219 U. S. 498, 31 Sup. Ct. 279, 55 L. Ed. 310. The problem here is of prime public concern and a continuing one. We are not warranted in relegating the parties to the condition which would result from withholding determination.

The judgment of the lower court is affirmed.

MR. JUSTICE HOLLAND dissents.

MR. JUSTICE BUTLER, and MR. JUSTICE BOUCK (who will later file a statement of his reasons), think that the case has become moot, and for that reason the writ of error should be dismissed.

The following opinion was filed March 19, 1936.

MR. JUSTICE BOUCK files the following opinion as a statement of his reasons for thinking that the proceedings in error should be dismissed without a decision on the merits:

At the very moment when in January of 1936 the tentative draft of the majority opinion herein first came on for consideration by this court the case was undoubtedly moot. (Italics in this opinion are mine.)

Under a practice heretofore uniformly followed by this court, we have hitherto refrained from deciding cases after they have become moot, whether by lapse of time or otherwise. Sound principles of law, justice, and reason underlie this procedure. Some of the Colorado cases establishing and approving the procedure will be cited later on in this opinion.

In the case at bar, the plaintiff in error Van DeVegt, desirous of operating a "liquor licensed drug store"

under section 18-A of chapter 142, S. L. 1935, asked the county court for a writ of mandamus to compel issuance to him of a license *for the year ending December 31, 1935.* If that license had been issued, it would now (in the year 1936) have automatically expired. However, the trial court refused to grant the writ, and so the license was not issued. Hence neither the applicant for the license nor the licensing authority (namely, the board of county commissioners of Larimer county, defendant in error here) has the slightest practical interest in any disposition that could now be made of the present case by this court. In other words, at this time there is no actual controversy here between litigants. Certainly we could not now consistently reverse the judgment which denied a mandamus writ and ourselves order the trial court to compel the issuing of a license for a period already wholly in the past, that is, the doing of things which can now no longer be done. To affirm the judgment, on the other hand, would be a useless and illogical act. Because the case is moot, anything this court might now say in so affirming would be nothing more or less than sheer dictum. Under our practice, it is no longer important or proper or lawful for us to consider whether the trial court was right or wrong.

To be consistent with the practice heretofore employed, this court must dismiss the proceedings in error on the simple ground that the case has become moot, regardless of whether the lower court erred or not.

We as a court are not commissioned to write a judicial code or treatise, nor to frame a set of working rules for the licensing authorities. We might have definite notions of how we ourselves would exercise our official discretion if we were duly elected to be such authorities in the executive branch of the state government. However, being merely a tribunal which reviews administrative acts when presented in an actual controversy, we as a court—coordinate, but not superior, as a branch of the government—have no right to arrogate to ourselves the functions of

the executive department. Colo. Const., Art. III. The actual licensing authorities must use their own official discretion, not ours, in each particular case. By not prejudicing such a controversy, but by letting it take its usual course, we shall be able to give future litigants their day in court according to the letter and the spirit of our Constitution.

A comparatively short period has elapsed since the enactment of the 1935 license statute. This may—and perhaps must—be the explanation of our failure to decide the present case before the matter became moot. One or the other or both parties may perhaps consider it a misfortune that this is so. But it is so, and the proceedings should, in accordance with our regular and wholesome practice, be dismissed. There is certainly ample time for the bringing and deciding of an actual case when and if another license applicant complains of alleged abuse of discretion by the licensing authority. That then will depend upon the particular facts in such actual controversy and not upon the facts in the present case now moot. "If, during the pendency of the appeal, the controversy between the parties, by reason of the occurrence of extrinsic events, has become moot or academic, the appellate tribunal will decline to express its opinion in the case and will dismiss the appeal." Zoline, Appellate Jurisdiction and Procedure, page 288, §2.

In Colorado we have uniformly applied this general rule. *Agricultural D. Co. v. Rollins*, 42 Colo. 267, 93 Pac. 1125; *People v. Hall*, 45 Colo. 303, 100 Pac. 1129; *Northern Colo. Co. v. Pouppirt*, 47 Colo. 490, 108 Pac. 23; *Denver v. Brown*, 47 Colo. 513, 108 Pac. 971; *Arnold v. Carey*, 60 Colo. 499, 154 Pac. 94; *People ex rel. v. Cannon*, 26 Colo. App. 500, 145 Pac. 711.

In *Northern Colo. Co. v. Pouppirt, supra* (47 Colo. at page 492, 108 Pac. at page 24), which like the case at bar was a mandamus case, Mr. Chief Justice Campbell, then an associate justice, said: "The mandate of the peremptory writ has, or has not, been performed. If it was

performed by defendant, as stated by counsel for plaintiff at the oral argument and not denied, defendant is not in a position to have a decision, upon this review, of the questions litigated and determined below. If the writ was not complied with, even if defendant is entitled to a reversal of the judgment, any order as to the merits that could be made here would be either useless or impossible of performance. The irrigation season of 1905 has long since passed *and it would be absurd now to make an order either denying or granting the writ prayed for.*"

With the greatest possible force the principle applies here, when the lower court has refused to grant a writ which cannot now be effective for any purpose whatever.

The case should, in my opinion, be dismissed without any purported decision on the merits.

---

The draft of the foregoing was submitted to my colleagues on January 15, 1936. Mr. Justice Young—without questioning the uniformity or soundness of the practice indicated by the Colorado citations I have above given—has undertaken, in a paragraph added at the close of his opinion, to overcome their authority by the mere mention of the case of *Southern Pacific Terminal Company v. Interstate Commerce Commission,* 219 U. S. 498, 31 Sup. Ct. 279, 55 L. Ed. 310.

The case, however, cannot accomplish such a purpose. The distinction between that case, on the one hand, and the Colorado cases cited as aforesaid and the case at bar, on the other, is clear and unmistakable.

In order not to rely upon my own interpretation of the case so relied upon by the majority, I shall let the United States Supreme Court speak for itself. I first quote, therefore, somewhat at length, from its opinion in the case referred to, as written by Mr. Justice McKenna, drawing vital distinctions which our own majority opinion wholly ignores. (Italics below will be mine.)

"This court," declares the learned Justice [219 U. S.

514, 31 Sup. Ct. 283, 55 L. Ed. 315], "has said a number of times that it *will only decide actual controversies,* and if, pending an appeal, something occurs without any fault of the defendant which renders it impossible, if our decision should be in favor of the plaintiff, to grant him effectual relief, the appeal will be dismissed. *Jones v. Montague,* 194 U. S. [24 Sup. Ct. 611, 48 L. Ed. 913], and *Richardson v. McChesney,* decided November 28 of this term, 218 U. S. 487 [31 Sup. Ct. 43, 54 L. Ed. 1121]. But in those cases the acts sought to be enjoined had been completely executed, *and there was nothing that the judgment of the court, if the suits had been entertained, could have affected.* The case at bar comes within the rule announced in *United States v. Trans-Missouri Freight Ass'n,* 166 U. S. 290, 308 [17 Sup. Ct. 540, 546, 41 L. Ed. 1107, 1016], and *Boise City Irr. & Land Co. v. Clark* (C. C. App. 9th Cir.), 131 Fed. Rep. 415 [65 C. C. A. 399].

"In the case at bar the order of the Commission may to some extent (the exact extent it is unnecessary to define) be *the basis of further proceedings.* But there is a broader consideration. *The question involved in the orders of the Interstate Commerce Commission are usually continuing* (as are manifestly those in the case at bar) and their consideration ought not to be, as they might be, defeated, by *short term orders, capable of repetition,* yet evading review, and at one time the Government and at another time the carriers have their rights determined by the Commission without a chance of redress."

Mr. Justice McKenna thereupon discusses the two cases thus cited by him to show what is *properly* considered *not moot,* continuing: "In *United States v. Trans-Missouri Freight Ass'n, supra,* the object of the suit was to obtain the judgment of the court on *the legality of an agreement between railroads, alleged to be in violation of the Sherman law.* In the case at bar the object of the suit is to have declared illegal an order of the Interstate Commerce Commission. In that case there was an attempt to defeat the purposes of the suit *by a voluntary*

*dissolution of the agreement,* and of the attempt the court said: *'The mere dissolution of the association is not the most important object of this litigation.* The judgment of the court is sought upon the question of *the legality of the agreement* itself, for the carrying out of which the association was formed, and *if such agreement be declared to be illegal* the court is asked not only to dissolve the association named in the bill, *but that the defendant should be enjoined for the future.* \* \* \* *Here* \* \* \* *there has been no extinguishment of the rights (whatever they are) of the public,* the enforcement of which the Government has endeavored to procure by the judgment of a court under the provisions of the act of Congress above cited. \* \* \*' ''

And after this discussion of the *Trans-Missouri* case, Mr. Justice McKenna proceeds to analyze the other authority cited by him, saying: ''In *Boise City Irr. & Land Co. v. Clark, supra,* the period for which a municipal ordinance fixed a water rate expired pending the litigation as to its legality, and it was contended that the case had become moot. The court replied: 'But the courts have entertained and decided such cases heretofore, *partly because the rate, once fixed, continues in force until changed as provided by law,* and partly because of the necessity or propriety of deciding some question of law presented which might serve to guide the municipal body when again called upon to act *in the matter.*' ''

The distinction which I am attempting to draw is not a technical or artificial one. It is fundamental. The United States Supreme Court itself has repeatedly explained and invariably limited the doctrine of *Southern Pacific Terminal Co. v. Interstate Commerce Commission, supra,* from which I have quoted and which, as already stated, is the sole authority cited by the majority opinion on the question whether the |case at bar is now moot. Thus, in 1916, Mr. Chief Justice White (one of the judges who decided the Southern Pac. Terminal Co. case in 219

U. S. and the Trans-Missouri case in 166 U. S.), handing down the opinion in *United States v. Hamburg-American Co.*, 239 U. S. 466, 475, 36 Sup. Ct. 212, 216, 60 L. Ed. 387, 391, a case involving the legality of a contract which had been entered into by certain steamship companies, but which was interrupted by the outbreak of the World War, used the following unequivocal language:

"While this mere outline [of the facts in that case] shows the questions which are at issue and which would require to be considered ;if we had the right to decide the controversy, it at once further demonstrates that *we may not, without disregarding our duty, pass upon them because of their absolute want of present actuality, that is, because of their now moot character* as an inevitable legal consequence springing from the European war * * *. The legal proposition is not in substance controverted, *but it is urged in view of the character of the questions and the possibility or probability that on the cessation of war the parties will resume or recreate their asserted illegal combination, we should now decide the controversies in order that by operation of the rule to be established any attempt at renewal of or creation of the combination in the future will be rendered impossible.* But this merely upon a prophecy as to future conditions invokes the exercise of judicial power not to decide an existing controversy, but to establish a rule for controlling predicted future conduct, contrary to the elementary principle which was thus stated in *California v. San Pablo & Tulare R. R.*, 149 U. S. 308, 314 [13 Sup. Ct. 876, 878, 37 L. Ed. 747, 748]: '*The duty of this court, as of every judicial tribunal, is limited to determining rights of persons or property, which are actually controverted in the particular case before it.* When, in determining such rights, it becomes necessary to give an opinion upon a question of law, that opinion may have weight as a precedent for future decisions. *But the court is not empowered to decide moot questions or abstract propositions, or to declare, for the government of future cases,*

*principles or rules of law which cannot affect the result
as to the thing in issue in the case before it.* \* \* \*,

"Our attention has indeed been directed to a recent
decision in *United States v. Prince Line, Limited,* 220 Fed.
Rep. 230, where although it was recognized that 'The
combination against which this proceeding is directed,
composed of two British and two German steamship com-
panies, has been practically dissolved as a result of the
European War,' and the 'questions presented 'have be-
come largely academic,' the court nevertheless proceeded
to consider and dispose of the case on the merits, observ-
ing in conclusion, however: 'In view of the fact that the
logic of events has turned this investigation into an au-
topsy, instead of a determination of live issues it seems
unnecessary to discuss the persuasiveness of the proofs,'
etc. But we cannot give our implied sanction to what
was thus done or accept the persuasiveness of the reason-
ing upon which the action was based in view of the settled
decisions of this court to the contrary and the funda-
mental principles of public policy upon which they are
based. \* \* \*

"Nor is there anything," continues the Chief Justice,
"in *United States v. Trans-Missouri Freight Association,*
166 U. S. 290, and *Southern Pacific Terminal Co. v. Inter-
state Commerce Commission,* 219 U. S. 498, *which con-
flicts with this fundamental doctrine.* In the first, the
Trans-Missouri case, a combination between railroads
charged to be illegal was by consent dissolved and it was
held that in view of the continued operation of the rail-
roads and the relations between them their mere consent
did not relieve of the duty to pass upon the pending
charge of illegality under the statute of their previous
conduct, since by the mere volition of the parties the com-
bination could come into existence at any moment. Leav-
ing aside some immaterial differences, in terms the ruling
in the Southern Pacific Case was based upon the decision
in the Trans-Missouri Case. Here on the contrary the
business in which the parties to the combination were en-

gaged has *by force of events beyond their control* ceased and by the same power any continued relation concerning it between them has become unlawful and impossible. The difference between this and the Trans-Missouri Case was clearly laid down in *Mills v. Green,* 159 U. S. 651 [16 Sup. Ct. 132, 40 L. Ed. 293], where after announcing the general rule as to the absence of authority to consider a mere moot question and referring to possible exceptions resulting from the fact that the want of actuality had arisen either from the consent of the parties or the action of a defendant, it was declared (p. 654): *'But if the intervening event is owing to the plaintiff's own act or to a power beyond the control of either party, the court will stay its hand.' "*

So spoke the United States Supreme Court in *United States v. Hamburg-American Co., supra.*

In *Southern Pac. Co. v. Eshelman,* 227 Fed. 928, 932, it was said:

"However convenient or desirable for either party that the questions mooted in the case be authoritatively settled for future guidance, the court is not justified in violating fundamental principles of judicial procedure to gratify that desire. To invoke the jurisdiction of a court of justice, it is primarily essential that there be involved a genuine and existing controversy, calling for present adjudication as involving present rights, and although a case may have originally presented such a controversy, if before decision it has, through act of the parties or other cause, lost that essential character, it is the duty of the court, upon the fact appearing, to dismiss it. [Citing numerous authorities.]

"The principles finding expression in these cases have been thus aptly epitomized and stated in 2 Encyc. Sup. Ct. Rep. 289, where, referring to the rule uniformly followed by the Supreme Court, it is said:

" 'It has been the universal practice of this court to dismiss the case whenever it becomes apparent that there is no real dispute remaining between the plaintiff and

the defendant, or that the case has been settled or otherwise disposed of by agreement of the parties, and there is no actual controversy pending. In other words, whenever it appears, or is made to appear, that there is no actual controversy between the litigants, or that, if it once existed, it has ceased, it is the duty of every judicial tribunal not to proceed to the formal determination of the apparent controversy, but to dismiss the case. It is not the office of courts to give opinions on abstract propositions of law, or to decide questions upon which no rights depend, and when no relief can be afforded. Only real controversies and existing rights are entitled to invoke the exercise of their powers.'

"The case of S. P. Terminal Co. v. Interstate Commerce Commission, 219 U. S. 498, 31 Sup. Ct. 279, 55 L. Ed. 310, referred to by plaintiff, is not apposite, as tending to show the inapplicability of the principles above stated to the present case. There the Interstate Commerce Commission had made an order, limited as to time, requiring the Terminal Company to desist from giving the preference complained of. The time limit of the order expired pending the appeal, and a motion to dismiss was made upon the ground that the case had thereby become moot; but it was held that, *as the Commission had power to immediately renew its order, the mere expiration of the particular order involved did not have the effect of settling the controversy,* and the cause could not, therefore, be justly said to have lost its vitality as presenting no living issue."

The general rule is unhesitatingly recognized both by the United States Supreme Court and by other federal courts. The exceptions represented by the Southern Pacific Terminal case include cases, for instance, where the legality of an order must be determined because of possible liability for reparations, or where there is a possible liability on an injunction or other bond, or where there is involved any other actual or potential liability or a vested interest. Compare: *Southern Pac. Co. v. In-*

*terstate Commerce Commission,* 219 U. S. 433, 451, 31 Sup. Ct. 288, 294, 55 L. Ed. 283, 290, per White, C. J.; *Ohio Collieries Co. v. Stuart,* 290 Fed. 1005, 1006. It is at once apparent that no such question is in the case at bar. The licensing authority in the case at bar duly acted—under the protection of the usual presumption in favor of official honesty and regularity—by refusing a license for the year 1935, already *expired at the time when the majority reached its opinion herein.* That refusal is final because of the lapse of time. This court cannot now lawfully make, authorize, or direct any other disposition of the matter once in controversy between these litigants. The license applicant in this case may or may not apply for a 1936 license. He can apply in ample time to have his application acted upon at an early date. If such an application, by the same or by another applicant, is made, it will be wholly different from the one for 1935, separate and apart therefrom. A mandamus in 1935 to compel the granting of the former application has no relation to a mandamus in 1936 to compel the granting of the later one.

The exact question which I have raised and earnestly insist upon is not new. It has been decided as I contend it should be in the present case; I find no decisions to the contrary.

In *Carlson v. Wyman,* 189 Mich. 402, 403, 155 N. W. 418, the eight members of the Supreme Court of Michigan united in declaring: ''This is a certiorari proceeding by which it is sought to review the action of the circuit judge in denying the relator's prayer for a writ of mandamus to compel the respondents, who are the president and board of trustees of the village of Munising, to reconvene and approve his application filed October 1, 1914, and bond filed October 10, 1914, to engage in the retail liquor business for the remainder of the license year. A meeting of the council was held on October 20, 1914, at which time the relator's application was rejected without any reason being given, and no action was taken with refer-

ence to the bond. It now appears, and is conceded by counsel for relator in his brief, that the period covered by the relator Carlson's application has passed, and that therefore no relief can now be granted him. This litigation, therefore, at this time presents simply abstract questions of law which do not rest upon existing facts or rights. This of necessity renders it a 'moot case,' which we will decline to determine.''

See also: *Schouwink v. Ferguson,* 191 Mich. 284, 286, 157 N. W. 726, where in a case involving a motor bus license the same court unanimously held (on *May 6, 1916*) as follows: ''It appearing by the record that relator's license expired May 1, 1916, and that the certificate of authority expired February 29, 1916, we have nothing before us but abstract questions of law, which do not rest upon existing facts or rights. The questions involved are moot questions, and the case becomes a moot case, which we must decline to consider. When it appears by the record that action by the court would be futile, by reason of the lapse of time, the case will be dismissed.''

The two cases just cited are, like ours, proceedings in mandamus. In mandamus proceedings the only question before the court is whether one party has a clear legal right to demand performance, by the other, of a clear legal duty. *Gunter v. Walpole,* 65 Colo. 234, 176 Pac. 290. No equitable issues are presented, as in So. Pac. Terminal Co. v. Interstate Commerce Commission.

From the existing multitude of decisions, among which I find not a single one that could justify this court in failing to view the present case as moot, I select at random and now add a few representative authorities, as throwing further light from various angles upon the vital principles involved, and as themselves citing numerous cases from their own and other jurisdictions: *Dakota Coal Co. v. Fraser* (C. C. A. 8), 267 Fed. 130; *Kirk v. North Little Rock Special School District,* 174 Ark. 943, 298 S. W. 212; *State ex rel. v. Wheaton,* 193 Ind. 30, 138 N. E. 820; *Coke v. Shanks, Auditor,* 218 Ky. 402, 291 S. W. 362; *Tierney*

*v. Union School District,* 210 Mich 424, 177 N. W. 955; *People ex rel. v. Washburn,* 227 N. Y. 585, 124 N. E. 723; *Garduño v. Diaz,* 46 Philippines, 472.

We are confronted here with the patent fact that the defendant in error has lost his interest in the case at bar as a once living controversy, now dead through no fault of his by expiration of the year in and for which alone the license he sought could have been issued. It is manifest that in consequence of the new situation his counsel have abandoned any possible idea of further litigating an issue which became purely academic and moot before this court made its decision. These facts are emphasized by the absence of a petition for rehearing herein. In a live case such a petition is a strong safeguard against possible error in judicial action by permitting correction on further consideration of points overlooked and misapprehended, and against the evil of unauthorized dictum. Certainly no expense of time or money for such a petition could be expected to be made when neither the petitioner for rehearing nor his adversary could derive the slightest legal or practical benefit from any decision the trial court has made or any it could make under our direction.

In view of the foregoing, I repeat that according to my conviction the proceedings in error should be dismissed as moot. Neither this court nor any other court can lawfully decide a dead case on its merits.

The present opinion is the one which I adopted by reference in and for the case of *Heuston v. Gilman,* 98 Colo. 301, 56 P. (2d) 40, on the day when the opinions in that case and the case at bar were announced. The fact that the Heuston case is still pending on petition for rehearing was the cause of delay in the filing hereof. My opinion is now filed in view of an order of this date relative to the date of releasing opinions for official publication.