In re Popp.

[Cite as In re Popp (1972), 33 Ohio App. 2d 22.]

(No. 32034—Decided December 6, 1972.)

Mr. *Robin M. Kennedy,* for petitioner.

Mr. *William J. Brown,* Attorney General, and *Mr. Thurman E. Anderson,* for respondent.

KRENZLER, J. On October 13, 1971, an affidavit was filed in the Probate Court of Cuyahoga County, alleging that petitioner Irene Popp was mentally ill, and by reason thereof was likely to injure herself or others if allowed to remain at liberty, or needed immediate hospital treatment. On December 20, 1971, a hearing was held in the Probate Court, and as a result, petitioner was ordered temporarily confined in the Cleveland Psychiatric Institute for examination and treatment. A second hearing was held on March

28, 1972, before a referee appointed by the Probate Court, and she was thereafter found to be mentally ill, and was ordered hospitalized at Cleveland State Hospital for an indeterminate period, pursuant to R. C. 5122.15.

Petitioner filed her petition for writ of habeas corpus on June 16, 1972. She alleged that her confinement violated her right to due process, guaranteed by the Fourteenth Amendment of the United States Constitution, because she was not represented by counsel at the hearings before the Probate Court. She represented that she was indigent and unable to secure the services of an attorney, and this was not challenged by respondent.

At the initial hearing on the petition, on June 23, 1972, respondents orally moved to dismiss the action on the grounds R. C. 5122.15 and 5122.36 gave petitioner an adequate remedy at law. This motion was overruled. Dates were then set for the filing of briefs by the parties, and the hearing on the merits of the case was set for July 21, 1972. Respondents then filed another motion to dismiss, on June 29, 1972, on the grounds that the petition failed to state facts showing a right to relief by habeas corpus. This motion was also overruled. Finally, at the hearing on July 21, 1972, respondents informed the court that petitioner was not in need of hospitalization and had been released. They thereupon moved to dismiss the case as moot. An affidavit and written motion to the same effect were later filed. This motion raises a procedural question which must be given priority over the substantive issue raised by petitioner.

Ordinarily, to entitle one to relief in a habeas corpus action, the result of such action must be to effectuate a release from present confinement. *Ball* v. *Maxwell* (1964), 177 Ohio St. 39. Since petitioner has already been released, this court cannot grant her any relief in this action. As to these parties, therefore, the case is moot.

As a general rule, such a case should be dismissed. There exists a well recognized exception to the general rule, however. When the case involves an issue which is of great public importance, *i. e.*, when it concerns the duty

and authority of public officials in a situation which is likely to recur, such issue remains vital even when the case becomes moot as to the parties. It might then be said that such a case is not moot, as to the public. Courts have frequently refused to dismiss such cases in order to retain jurisdiction to decide the important public issues involved, and for the guidance of the public officials in the performance of their duties.

Ohio Courts of Appeals have refused to dismiss actions even though they have become moot as to the parties. When a case becomes moot, the jurisdiction of the court over it is not affected; the decision to hear and determine the issues raised becomes a matter of discretion in accordance with the facts in each case. *Ink* v. *Plott* (1960), 175 N. E. 2d 94; *Overesch* v. *Campbell* (1953), 95 Ohio App. 359.

In *Wallace* v. *University Hospitals of Cleveland* (1961), 171 Ohio St. 487, the Supreme Court dealt with a motion to dismiss an appeal for mootness. The court first quoted from 132 A. L. R. 1186:

" 'The proposition that an appellate court may retain an appeal for hearing and determination if it involves questions of public interest even though it has become moot so far as the parties of the particular action are concerned or though the parties desire that it be dismissed, is supported, either directly or by implication, by the great weight of authority.' "

The Supreme Court recognized and approved the exception to the general rule, although it found the particular case in which it was discussed, not a proper case for application of the exception.

"Although the temptation may be great to indulge in the theory that a case may be 'moot as to the parties' but not 'moot as to the public,' as did the court in *Van DeVegt* v. *Larimer County*, 98 Colo., 161, 55 P. (2d), 703, where the court said that a 'case is not moot where interests of a public character are asserted under conditions that may be immediately repeated, merely because the time for a particular order has expired,' the majority of

this court are of the opinion that in *this* case we should follow the usual procedure of deciding cases only as they exist between the parties thereto * * *.'' 171 Ohio St. 487, 489.

Cases from other jurisdictions which recognize the exception are too numerous to list. Examples are *Diamond* v. *Bland* (Ct. App. 1970), 8 Cal. App. 3d 58, 87 Cal. Rptr. 97; *Joint School District No. 8* v. *Wisconsin Emp. Rel. Bd.* (1967), 37 Wis. 2d 483, 155 N. W. 2d 78; *Bd. of Education* v. *Tp. Council E. Brunswick* (1966), 48 N. J. 94, 223 A. 2d 481; *People, ex rel. Wallace,* v. *Labrenz* (1952), 411 Ill. 618, 104 N. E. 2d 769; *Van de Vegt* v. *Board of Commissioners* (1936), 98 Colo. 161, 55 P. 2d 703; and see cases cited in Annotation, 132 A. L. R. 1185 (1941).

Legality of commitment proceedings of alleged mental incompetents is a matter of great public importance. It is also reasonable to expect that commitment proceedings under R. C. 5122.15 will continue to occur. Clearly this is a case where an authoritative determination of the duties of judges and referees in such hearings is desirable. We therefore find that this case falls within the exception to the rule requiring dismissal, and overrule the motion to dismiss.

We come now to a consideration of the substantive issue raised by petitioner.

Chapter 5122, Revised Code, deals with hospitalization of the mentally ill. Proceedings under this chapter result in a judicial-medical determination. This chapter provides for three types of involuntary hospitalization: (1) short-term or emergency; (2) temporary or 90-day; and (3) indefinite. R. C. 5122.08 to 5122.10 authorize short-term hospitalization of alleged mentally ill persons, without a hearing or representation by counsel in emergency situations. Petitioner was not hospitalized under these sections, and nothing in this opinion should be interpreted as having any bearing on them.

R. C. 5122.11 *et seq.,* deal with the involuntary hospitalization of such persons in other than emergency situations. Commitment proceedings may be initiated, under R.

C. 5122.11, by the filing of an affidavit with the Probate Court; under R. C. 5122.15 such proceedings may result in a person's being confined in a mental institution, pursuant to court order.

R. C. 5122.15 requires two hearings before a person is found to be mentally ill subject to hospitalization by court order.[1] The first hearing has the purpose of determining whether there is probable cause to believe the person is mentally ill and in need of treatment, and is to take place prior to a temporary hospitalization of the alleged mentally ill person. This temporary hospitalization, which is not to exceed ninety days, has the aim of permitting in depth examination and observation which will provide a basis for the medical findings and recommendations to be used at the second hearing. After the second hearing, the individual may be found to be mentally ill subject to hospitalization by court order, and may be ordered confined in a hospital or mental institution for an indefinite period.

With reference to the first hearing, R. C. 5122.15 provides that the court *shall* notify the alleged mentally ill person of his right to secure counsel, and further provides that the court *may* appoint, at any time in the proceedings, an attorney to represent the person. The section makes no reference to attorneys in connection with the second hearing. Thus the statute entrusts the court with discretion either to appoint counsel or not, as it deems proper.

Petitioner does not contend that there was any abuse of discretion in this case, or that the statute was not complied with. We are presented only with the question whether, regardless of R. C. 5122.15, petitioner was denied constitutional due process when an attorney was not appointed for her at either hearing.

Respondent argues that the constitutional right to

---

[1] " 'Mentally ill individual subject to hospitalization by court order' means a mentally ill individual who, because of his illness, is likely to injure himself or others if allowed to remain at liberty, or is in need of care or treatment in a mental hospital, and because of his illness lacks sufficient insight or capacity to make responsible decisions with respect to his hospitalization." R. C. 5122.01(B).

counsel is a right only of a defendant in a criminal trial, and that since petitioner was confined as a result of a *civil,* not a *criminal* proceeding, there was no violation of due process in failing to appoint an attorney to represent her. This argument is not convincing. It is true that the only express constitutional declaration of a right to counsel, in the Sixth Amendment, relates to *criminal* prosecutions. But this is not controlling. The concept of due process, as it appears in the Fourteenth Amendment, does incorporate many of the rights specifically enumerated in the Bill of Rights; see *Duncan* v. *Louisiana* (1968), 391 U. S. 145; and specifically the right to counsel in a criminal case, *Gideon* v. *Wainwright* (1963), 372 U. S. 335, and *Argersinger* v. *Hamlin* (1972), 407 U. S. 25. But due process is not limited to those rights.

The "civil" or "criminal" nature of proceedings has been held not to be determinative of what due process requires in such proceedings. Thus, due process includes the right to appointed counsel in proceedings to determine whether an individual is a juvenile delinquent, although such proceedings may technically be civil, not criminal, in nature. *In re Gault* (1967), 387 U. S. 1. As another example, the Illinois Supreme Court has held that in "civil" proceedings to have a person declared a "sexually dangerous person," due process requires that the defendant be given the opportunity to confront the witnesses against him, as in a criminal prosecution. *People* v. *Nastasio* (1960), 19 Ill. 2d 524, 168 N. E. 2d 728. The determinative factor in such decisions is that the proceedings may result in a person's involuntary confinement, and not whether the proceedings are labeled "civil" or "criminal." As was said in *In re Gault*:

"Ultimately, however, we confront the reality of that portion of the Juvenile Court process with which we deal in this case. * * * The boy is committed to an institution where he may be restrained of liberty for years. It is of no constitutional consequence * * * that the institution to which he is committed is called an Industrial School. The fact of the matter is that * * * an 'industrial school' for juveniles is

an institution of confinement in which the child is incarcerated for a greater or lesser time." 387 U. S. 1, 27.

To the same effect is *Heryford* v. *Parker* (10th Cir. 1968), 396 F. 2d 393, which held that the right to counsel applied in proceedings to commit one to a training school for feeble-minded and epileptic persons:

"* * * It matters not whether the proceedings be labeled 'civil' or 'criminal' or whether the subject matter be mental instability or juvenile delinquency. It is the likelihood of involuntary incarceration—whether for punishment as an adult for a crime, rehabilitation as a juvenile for delinquency, or treatment and training as a feeble-minded or mental incompetent—which commands observance of the constitutional safeguards of due process." 396 F. 2d 393, 396.

Therefore, the fact that involuntary commitment proceedings may be labeled "civil" does not control this case. The substance of the matter is that proceedings under R. C. 5122.15 may result in a person's being subjected to confinement against his will, first for 90 days, and then for an indeterminate period. It is this fact that primarily determines the requirements of due process in those proceedings.

The concept of due process encompasses all the rules and ideas which are fundamental and necessary to fairness, essential justice, and the safeguarding of ordered liberty. *Powell* v. *Alabama* (1932), 287 U. S. 45; *Gideon* v. *Wainwright, supra*. The issue in this case is whether it was consistent with our society's high ideals of basic fairness, justice and liberty, to deny petitioner the assistance of an attorney at the hearings held under R. C. 5122.15.

In *Powell* v. *Alabama, supra,* the Supreme Court was confronted with the question whether the denial of counsel in a state criminal trial violated the defendant's right to due process. The Court resolved the question by reasoning that due process requires notice and an opportunity to be heard; and that a hearing, in the case of a criminal prosecution, necessarily implies the aid of counsel when desired. For, "the right to be heard would be, in many

cases, of little avail if it did not comprehend the right to be heard by counsel.'' 287 U. S. 45, 69. The Court noted that even an intelligent and educated layman would be unfamiliar with legal procedures, referring to the rules of evidence, the technical rules of pleading, and the knowledge and skill required in preparing and putting on a defense. The Supreme Court concluded that a defendant ''requires the guiding hand of counsel at every step in the proceedings against him, * * *'' 287 U. S. at 69, and that denial of counsel in a criminal prosecution was therefore a denial of due process.

We believe that this reasoning likewise dicates that counsel be present in a hearing under R. C. 5122.15. In such a hearing, just as in a criminal prosecution, the right to be heard may be of little avail, if does not include the right to be represented by counsel. Just as in a criminal prosecution, effective participation in the hearing would require a knowledge of the law, both as to procedural and substantive prerequisites to a valid commitment order; a knowledge of the rules of evidence and the ability to examine and cross-examine witnesses; and the ability to construct and present a case as to factual issues. In addition, some acquaintance with current theories of mental illness might be necessary, in order to understand the claims of medical experts as to the person's mental condition and his need for hospitalization. It simply cannot be expected that even an intelligent layman will be able to effectively defend himself in a hearing under R. C. 5122.15. This will be much more true of those who are not in full command of their mental faculties, who may, nevertheless, have a valid defense to an involuntary commitment proceeding.

In the light of the foregoing, and because a hearing under R. C. 5122.15 may result in a person's being involuntarily incarcerated, we hold that due process includes the right to be represented by an attorney at the hearing.

Other courts have reached the same conclusion. *Heryford* v. *Parker, supra; People, ex rel. Woodall, v. Bigelow* (1967), 20 N. Y. 2d 852, 231 N. E. 2d 777; *People, ex rel.*

*Rogers,* v. *Stanley* (1966), 17 N. Y. 2d 256, 217 N. E. 2d 636; *Denton* v. *Commonwealth* (Ky. 1964), 383 S. W. 2d 681; and cf. *Dixon* v. *Attorney General of Commonwealth of Pa.* (D. C. Pa. 1971), 325 F. Supp. 966, and *Howard* v. *Overholser* (D. C. Cir. 1942), 130 F. 2d 429.

Although we hold that representation by counsel is mandatory in an R. C. 5122.15 hearing, to prevent an individual from being deprived of his liberty without due process, we also recognize the potential difficulties this might present in the administration of the probate court. We trust that the Probate Court will take such steps as are necessary to ensure the efficient administration of its operations, including the promulgation of rules to define the role of attorneys, and to guide their conduct in commitment proceedings, while still protecting the rights of individuals as stated in this opinion.

We therefore find that petitioner's confinement was illegal, and in violation of the Fourteenth Amendment, and that she was entitled to be discharged.

*Judgment accordingly.*

JACKSON, and DAY, JJ., concur.