No. 14,276.

MAURER *v.* BOGGS, MAYOR ET AL.

(82 P. [2d] 1099)

Decided August 31, 1938.   Rehearing denied October 3, 1938.

Mr. J. V. REDMOND, Mr. DEON DREFKE, for plaintiff in error.

Mr. GEORGE E. McCONLEY, JR., for defendants in error.

*In Department.*

MR. JUSTICE HILLIARD delivered the opinion of the court.

A MANDAMUS action to require the city council of Sterling to issue to plaintiff in error a license to retail a

legislatively defined nonintoxicating beverage commonly known as 3.2 per cent beer, at a designated location in that city, which the council had refused. Whether the council's refusal was arbitrary or without good cause, which section 6, chapter 82, Session Laws 1935 ('35 C. S. A., chapter 89, §6), inhibits, had negative resolution below. The judgment is challenged on error.

It appears that plaintiff is a citizen of the United States, a resident of Colorado, of good moral character and reputation, has never been convicted of a felony or crime, has a state license to the requisite end, and that other than failure to have a license from the city, denied him in the circumstances to be stated, he is entitled to sell 3.2 per cent beer under license as sought by him; that he owns the property (706 West Main Street) wherein he would retail the beverage mentioned, and where he has conducted a restaurant and sold 3.2 per cent beer since August 22, 1933, the effective date of the initial law permitting such sale, always under license granted annually by the city. First Extraordinary Session Laws '33, chapter 5, of which the 1935 act is amendatory.

It further appears that the location involved is in what for some eighteen years has been a business district, designated by municipal zoning ordinances as "D" Commercial District, and that there is no ordinance or other formal restriction against the operation of a restaurant within said district, or the sale of 3.2 per cent beer therein; that for some three or four blocks in all directions from plaintiff's restaurant the population is preponderantly of German-Russian origin, considerably given to drinking beer; that the principal business section of the city, only in which, as the municipal officers testified, licenses to sell 3.2 per cent beer hereafter will be granted, is ten blocks distant; that from the beginning plaintiff's restaurant has enjoyed a profitable patronage, due in considerable degree to the sale of 3.2 per cent beer therein, and it has met the "reasonable requirements of the neighborhood and the desires of the inhabitants"

thereof, declared by statute to be important considerations. Sec. 4 (c) of the act.

The minutes of the city council in relation to the matter, show that August 2, 1937, "An application from Carl Maurer for a renewal of license to operate a 3.2 per cent beer dispensary at 706 West Main Street was read and ordered laid on the table until the next regular meeting." August 16, 1937: "Application of Carl Maurer, 706 West Main St., for renewal of 3.2 per cent beer license, upon paper ballot, was refused at this location by five to one vote, members of the council explaining that a settled policy having been adopted not to issue beer or liquor licenses or renewals to applicants in outlying or fringe territory of the city on account of the policing of such dispensaries being an added burden on the police department, the personnel being limited to but five members, and that licenses for permission to operate such dispensaries be confined to the downtown district." August 20, 1937: "The mayor pro tem announced that this special meeting had been called for the purpose of further considering application of Carl Maurer for a license to operate a 3.2 beer dispensary at 706 West Main St., application for a license at said location having been refused at a regular meeting of the council Monday, August 16th. Mr. Maurer was present and stated he was desirous of having a license at the location noted in application, as he owned the property and had been in business since '33. Mr. O. V. Chipman was present and called attention of the council to their action in refusing a prospective tenant of his a license to operate a 3.2 beer dispensary in the same section of the city. Voting action by paper ballot of the council, * * *, resulting as follows: 'No,' five votes; 'Yes,' one vote."

It is clear that prior to plaintiff's application for renewal of his license, and regardless of his fitness to have the license, or the requirements of the neighborhood where he sought the privilege of continuing the sale of 3.2 per cent beer, or the desires of its inhabitants,

the city council had determined to reject it. The trial judge referred to that attitude of the council as a "policy" which the city had "adopted." Such predetermination, as we think, does not rise to the dignity of a policy of legal intendment. Without intimating any view of the legal effect thereof in the circumstances here, if so undertaken, for we have none, it is to be remarked that the city had not "ordained" in statutory manner, and published and made known to the world, that, "to provide for the safety, preserve the health, promote the prosperity, improve the morals, order, comfort and convenience of such corporation and the inhabitants thereof," it elected to deny all licenses of the nature here involved for use other than in a restricted area. See vol. 4, '35 C. S. A., c. 163, sections 239, 240. On the contrary, as witness this matter and others mentioned in the record, it continues to consider and pass upon individual applications for such licenses as presented. If the course pursued by the city council is sound in law, what is denied to Smith today, with legal propriety may be granted to Jones tomorrow, or, indeed, to Smith himself on the same or any day. We are of the view that what the city denominates its "policy" is but an ephemeron. It is potentially unstable and lacking in legal virtue. Discussion of underlying principles is to be found in *People v. Stanley,* 90 Colo. 315, 9 P. (2d) 288; *City of Central v. Sears,* 2 Colo. 588; *Meyer v. City of Decatur,* 143 Ill. App. 103; *State ex rel. Makris v. Superior Court,* 113 Wash. 296, 193 Pac. 845.

At the trial before the court the city was permitted to introduce three exhibits filed with the city council the preceding year. Not one of them contained any reference to plaintiff's present or any previous application for license. Two of the exhibits were protests against other applicants for such licenses. The third exhibit contained some uncomplimentary references to plaintiff, but its signers only asked that the authorities make an investigation. Whether investigation was made

does not appear, but it is to be observed that none of the city's witnesses, including several members of the council, the city clerk and chief of police, spoke unfavorably of plaintiff, and generally they held him in favor. None of the signers of any of the exhibits protested in writing or appeared in person to oppose plaintiff's application, nor did any one. One man, as the minutes quoted show, attended the last meeting of the council at which plaintiff's application was considered and called attention to the fact that the council had refused a license to a prospective tenant of his in the same section of the city. His remark was not pertinent to any issue before the council, and seemingly was so regarded by that body. The matter to which he referred was covered by one of the exhibits under discussion. Objections to the exhibits, timely and sufficiently offered, should have been sustained.

We do not regard *Van DeVegt v. Commissioners*, 98 Colo. 161, 55 P. (2d) 703, as in point. There, briefly, the application under consideration was for license to sell intoxicating liquor under chapter 142, Session Laws 1935 (not for a license to sell a nonintoxicating beverage under chapter 82, same Laws, as here). In that matter several hundred persons signed a petition in favor of the license, while other hundreds signed a remonstrance, both currently and publicly interposed to the particular application involved. Such respectability and strength of numbers attended pro and contra, that the licensing authority was at some loss to determine where the very right lay. Its adverse holding to the applicant, the record considered, was not thought by us to be capricious or arbitrary; and that was the sum of our decision. Here, as we have seen, there was not only no remonstrance against renewal of plaintiff's license, as there had been none for previous years, but the licensing authority was at pains to record that it denied the license because of its "settled policy" to limit the sale of 3.2 per cent beer to an restricted area. That, the record considered and

the law applied, was not within any power the council possessed or was authorized to exercise.   S. L. '35, c. 82, §4(c).

The alternative writ of mandamus should have been made peremptory; and that the trial court now may so adjudge, let the judgment under review be reversed.

MR. JUSTICE YOUNG, MR. JUSTICE BAKKE and MR. JUSTICE KNOUS concur.