## No. 16,330.

### MacArthur, Manager of Safety of Denver *v.* Sierota, Doing business as Dixie Market.

(221 P. [2d] 346)

Decided June 26, 1950.

Mr. J. GLENN DONALDSON, Mr. ABE L. HOFFMAN, Mr. DAVID V. DUNKLEE, for plaintiff in error.

Mr. HARRY L. SILVERMAN, for defendant in error.

*En Banc.*

MR. JUSTICE STONE delivered the opinion of the court.

ON certiorari, the trial court reviewed the refusal of the Manager of Safety and Excise, as licensing authority of the City and County of Denver, to issue a license to defendant in error for the sale of fermented malt beverages at his grocery store. Such refusal was there held arbitrary and without good cause and the licensing authority brings error.

Separate statutory provisions, found in chapter 89, article 1, '35 C.S.A., govern the manufacture and sale of such beverages, commonly referred to as 3.2% beer. The statute provides that a licensee shall be a citizen of the United States and resident of the State of Colorado, section 4(a), and of good character and reputation, section 4(b); that "In considering the issuance of licenses, the licensing authority, either state or local, shall consider the reasonable requirements of the neighborhood and the desires of the inhabitants as evidenced by petitions, remonstrances, or otherwise," section 4(c), and that "No licenses shall be refused arbitrarily or without good cause," section 6.

At the hearings held by the licensing authority, applicant submitted petitions signed by 170 "owners and residents of property within a radius of six blocks" of his grocery store, requesting that the application be granted. No remonstrance or petition to the contrary was presented. It was stipulated that there were nine

beer outlets within said radius of six blocks, of which five had drug liquor licenses, two had package liquor licenses, one had a hotel and restaurant liquor license, and one a fermented malt beverage (3.2% beer) license, such as sought by applicant here. Three witnesses beside applicant himself testified in his behalf. The first, George A. Baker, secretary of state, testified that he had become acquainted with the store while he was collecting accounts prior to attaining his present office, and knew the neighborhood well. He was very indefinite as to the requirement of that neighborhood for another beer outlet, but testified, "I would say that it would probably be all right in that location. That is my opinion." And again, "I imagine the neighborhood could take it * * *." The next witness, Eugene M. Marshall, who was a truck driver of the neighborhood, testified that he bought groceries at applicant's store and it was necessary for him to go to a different place to get his beer; that he usually bought two or three quarts at a time and sometimes drank it all Saturday night so that he had none on Sundays and applicant's store was open Sunday mornings. He also testified that he felt the need of a place nearer his home, "because it would be a lot more convenient for my mother or my wife to get it because they don't drive and they would have to walk such a distance to get it. It is awful heavy"; that applicant's store is only a block and a half from his home; that a store at 29th and Humboldt, which has 3.2% beer, is only two blocks away, but he had been going farther for his beer because he "didn't realize" that the latter place had it. The third witness, Abner H. Bell, by occupation a railroad fire lighter, testified that he obtained his beer at a drugstore having a liquor license, mostly two or three quart bottles at a time; that he bought groceries at applicant's store on Sunday mornings and it was inconvenient not to be able to buy his beer at the same place.

The evidence also disclosed without contradiction that

the distance between applicant's store and the Manual Training High School was only 176 feet; that students from the school were frequent visitors at the store to buy such things as paper and ice cream. Applicant testified as to their ages that, "They run between fifteen, sixteen, and some over eighteen. There is a lot of children over there over eighteen; they come back from the Army and they come back to school"; that he and his wife ran the store; that he planned to put the beer in the center of the main floor of the store and keep beer, pop and milk in the same cooler, where most of the time customers helped themselves, and that when he was making deliveries his wife was in sole charge of the store.

The Manager of Safety and Excise denied the application on the ground that the applicant had not established a need in the neighborhood for the license and, "In addition to the above, the record discloses that the proposed premises were one hundred and seventy-six feet from Manual Training High School and experience has disclosed that where an age group is present which is both above and below eighteen years that the temptation to minors to attempt to purchase beer is created to such an extent that a reasonable man would not, in my opinion, establish such a temptation. Your application is, therefore, denied."

█ There is no evidence, and no contention, in behalf of the licensing authority that the character of the applicant or the desires of the inhabitants do not support the application. The two questions involved are, (1) whether or not applicant had presented such convincing and undisputed evidence of the "reasonable requirements of the neighborhood" for another outlet for the sale of 3.2% beer that a denial on the ground of failure in such proof was arbitrary and without good cause and, (2) whether the discretion of the licensing authority must here be restricted to, and limited by, evidence as to the reasonable requirements of the neighborhood.

There is discussion by counsel in the briefs as to whether or not under our present laws "fermented malt beverage" (3.2% beer) is an intoxicating liquor. We think that question unimportant here since, in any event, the Legislature had the right to prescribe by statute the regulation of, and limitations upon, its sale here involved.

■ As to the first question, there is no showing as to practical difference in content, price or choice between beer sold under license for sale of "fermented malt beverages" and that sold under license for the sale of "malt, vinous, and spirituous liquors," and in view of the evidence above summarized, showing nine outlets for the sale of beer within a radius of six blocks of applicant's store, and of the equivocal testimony of the Secretary of State, and the limited basis of opinion of the other witnesses, it cannot be said that the showing made by applicant of need for another beer outlet in that neighborhood was so plain and certain that reasonable men could not disagree thereon and that the action of the licensing authority in denying the application was therefore arbitrary and without good cause.

It is insisted in behalf of applicant that the subsequent issuance of a license for the sale of malt, vinous and spirituous liquors to another applicant on premises only three blocks away was an admission that there was a reasonable need and requirement for another licensed place in the neighborhood, and that the denial of a license to this applicant, and the granting of one to a later applicant was plainly arbitrary. It seems sufficient answer to note that the premises for which the license was granted were much further from the high school; also that under that license, liquor could not be sold to any person under the age of twenty-one nor legally drunk on the premises.

■ As to the second question, we cannot agree with the argument of counsel for applicant that, since the character of the applicant and the desires of the com-

munity sufficiently appear, the Manager of Safety and Excise has no discretion except as to the reasonable requirements of the neighborhood. While the statute specifically provides that the licensing authority shall consider these requirements in issuing the license, its consideration is not restricted to them. It does not provide that no license shall be refused where these requirements are satisfied; rather, it says they shall not be refused "arbitrarily or without good cause," and upon certiorari the court is not required to determine whether the applicant has sufficiently established these three requirements, but whether "said refusal was arbitrary and without good cause." As we said in *Downes v. McClellan,* 72 Colo. 204, 210 Pac. 397, "This statute is not one for revenue only. It is one related to the exercise of the police power and to regulate the businesses enumerated. The power to license in such cases includes the power to refuse a license, even where statutory or preliminary requirements are complied with. [Citing authorities.] The power to refuse a license necessarily means having a discretion to grant or refuse, and mandamus will not lie to compel the granting of a license where it is not alleged and shown that the exercise of such discretion was arbitrary." We think it was the legislative intent in passing this statute, as we held was its intent in adopting the very similar provisions regarding the issuance of licenses for the sale of malt, vinous and spirituous liquors, to vest a wide discretion in licensing authorities. *Van DeVegt v. Commissioners,* 98 Colo. 161, 55 P. (2d) 703; *Board of County Commissioners v. Buckley,* 121 Colo. 108, 213 P. (2d) 608.

 It is urged by applicant that the proximity of his store to a high school may not be considered, for the reason that the Legislature, while prescribing a distance of 500 feet within which other alcoholic liquor may not be sold, makes no such provision as to fermented malt beverages. We cannot agree. The only difference is that in the case of other liquors the pro-

hibition is mandatory, and in the case of 3.2% beer it is merely discretionary. The evidence as above noted disclosed that students both above and below eighteen years of age attend the school, which is located only 176 feet from applicant's store and which they frequent for the purchase of paper and ice cream. Under the statute, 3.2% beer may legally be sold to those students who are eighteen years of age and may legally be consumed on the premises, and under the testimony of applicant himself he proposed to keep his beer in the same cooler with the milk and pop where customers served themselves. There would thus be the most wide open invitation for the purchase of beer by the eighteen-year-old students, and the temptation also for them to procure it for the use of younger students who might visit the store with them. Surely it cannot seriously be urged that under such circumstances the Commissioner of Safety and Excise acted arbitrarily and without good cause in denial of a license for the location here sought, and that, in our words of the Van DeVegt case, "Reasonable men from a fair and honest consideration of the evidence must have arrived at a contrary conclusion and granted a license accordingly."

The judgment of the trial court is reversed.

MR. JUSTICE HOLLAND dissents.

MR. JUSTICE HOLLAND dissenting.

This action involves the denial by the city licensing authority of a license to sell 3.2% beer, and the trial court found the denial to be arbitrary and capricious and ordered the issuance of a license. The defendant in error Sierota, the owner and operator of a grocery and meat market at 1610 E. 27th Avenue in the city and county of Denver, in the early part of 1948, applied to the plaintiff in error, Manager of Safety and Excise of the City and County of Denver, for the issuance of a license to sell beer containing not more than 3.2%

alcohol at his place of business. All preliminary requirements were met by the applicant and his application was accompanied by petitions signed by 170 residents and property owners residing within a radius of six blocks from the applican't place of business. No objections or remonstrances were filed. Approximately six months lapsed without action on the part of the licensing authority. Finally a hearing was had before the Manager of Safety and the application was denied on the ground that the requirements of the neighborhood were served in that there were nine liquor outlets within the area. However, there was only one outlet for 3.2% beer. Not being satisfied, the applicant applied to the district court for relief and the matter was remanded to the Manager of Safety to permit the applicant an opportunity to present additional evidence as to the requirements of the neighborhood. After further delay, a second hearing was held before the manager, at which it developed that the applicant's place of business was only 176 feet from the Manual Training High school. The application was again denied with the additional reason of the proximity to the school. In due course, this ruling of the Manager of Safety was submitted to the district court for review, resulting in a finding that his action in denying the application for license was arbitrary and capricious.

It is the contention of the applicant, defendant in error, that where the statutory qualifications and conditions exist for the issuance of a 3.2% beer license under article 1, chapter 89, '35 C.S.A., the licensing authority must issue such license; also that the proximity of the school is not ground for refusal. For a reversal of the judgment, the Manager of Safety, plaintiff in error, insists that in refusing to grant the license, he exercised the sound judicial discretion vested in him and says that the fact that the neighborhood was adequately supplied by existing outlets, and further that the location of the premises on which the license was

sought being within 176 feet of a public school, were proper grounds for refusing to grant the license.

A determination of the questions presented positively turn on the matter of whether or not the Manager of Safety has the discretionary power exercised when it pertains to a 3.2% beer license. No successful argument could be presented against such discretionary power in the consideration of the issuance of a so-called hard liquor license.

If uncertainty exists upon this question, it is due to the indirect relationship, and possible confusion between the two separate and distinct acts of the legislature, namely, House Bill No. 953 for regulating the sale and manufacture of 3.2% beer, to be found as chapter 82 of the Session Laws of 1935, and House Bill No. 192, regulating the manufacture and sale of intoxicating liquors to be found as chapter 142 of the Session Laws of 1935.

The Act regulating intoxicating liquors is, by section 1 thereof, declared to be an exercise of the police powers of the state for the protection of the economic and social welfare, the health and peace and morals of the people of the state, and in considering the issuance of a license for the sale of intoxicating liquors, including beer containing more than 3.2% alcohol by weight, the Manager of Safety, plaintiff in error, and the licensing authority here involved, is charged with the duty of trying to preserve the morals and safety of the public and in doing so has a free exercise of the police power of the state not to be used arbitrarily or capriciously. Among other restrictions, the Act specifically provides that no license provided for under the Act shall be issued to or held by any person who will operate any place where liquor is sold or to be sold by the drink within 500 feet from any public or parochial school. It is at once clear that had the application here been made for a license to sell intoxicating liquor, the action of the Manager of Safety would be unassailable because

it was within the terms of the statute, and a proper exercise of his discretion.

The application, being for license to sell 3.2% beer, which is controlled by the act of the legislature specifically dealing with this subject, and separate and apart from the legislative act controlling the manufacture and sale of intoxicating liquors, creates a different question, the delicacy of which leaves the proper determination thereof not without difficulties. No doubt that in the administration of the 3.2% beer or malt beverage act, some confusion has existed, largely growing out of the indirect relationship of the administration of the Act controlling intoxicating liquor. If malt beverage containing not more than 3.2% alcohol is considered intoxicating, the legislature has failed to so classify it. It is true that by section 2 of the original act, it is declared that fermented malt beverages containing not more than 3.2% alcohol by weight were not intoxicating. It also is true that the legislature in 1945 amended this section by omitting "and such fermented malt beverage is hereby declared to be nonintoxicating" from the Act. It is equally significant that to date, the legislature has not so classified such malt beverage as intoxicating liquor, the manufacture and sale of which is to be controlled by the Act hereinbefore referred to and now appearing as article 2, chapter 89, '35 C.S.A.

Further clarifying the intent of the legislature that the control of malt beverage containing not more than 3.2% alcohol is separate and apart from malt beverages containing more than 3.2%, and spiritous and vinous liquors, is the specific provision in section 6, chapter 82, S.L. '35, where it is stated, "All licenses granted and issued under this Act are separate and distinct licenses from any licenses to be granted and issued under any other Act pertaining to malt, vinous and spiritous liquors containing more than 3.2% of alcohol by weight." The Act does not specify to whom or where 3.2% beer shall not be sold except by the 1945 amend-

ment which provides that it is not to be sold to any person under the age of eighteen years. The same legislature in the same year by an Act approved one day later than the Act under discussion, wisely prohibited the sale of intoxicating liquors and malt beverages containing more than 3.2% alcohol to certain persons, and within 500 feet of a public or parochial school. In the Act controlling the manufacture and sale of the 3.2% beer, no such prohibitions are found except as above noted.

Section 4 of the Act, in which the word "shall" is used, seems to be mandatory under certain requirements and is, "Licenses shall be granted to any person or persons, partnership, association, organization or corporation desiring to manufacture, import and sell said fermented malt beverage as defined in this Act, upon the following qualifications and conditions:

"(a) Said licensee shall be a citizen of the United States and a resident of the State of Colorado, and if a corporation must be incorporated under the laws of the state of Colorado or duly qualified to do business in the State of Colorado;

"(b) Licensee shall be of good character and reputation and shall never have been convicted of a felony or crime in any court of the United States or any court of record of any state or territory of the United States, and if the licensee is an association, organization or corporation, then the officers, directors and the stockholders and members of such association, organization or corporation owning more than a 10% interest therein shall be of good character and reputation and shall never have been so convicted.

"(c) In considering the issuance of licenses the licensing authority, either state or local, shall consider the reasonable requirements of the neighborhood and the desires of the inhabitants as evidenced by petitions, remonstrances or otherwise."

It would seem that if these requirements exist, the

licensing authority is obliged to issue such license after considering only the reasonable requirements of the neighborhood and the desires of the inhabitants as evidenced by petitions, remonstrances or otherwise. In the case before us, plaintiff in error, the Manager of Safety, admits the existence of these qualifications of the applicant. 170 residents of the neighborhood signed a petition which accompanied the application for the license. No remonstrance or objections appeared from any source. The word "requirement" as used in the section is awkward and misleading. It may be difficult for many people to believe that the sale of any beverage, alcoholic or not, is a requirement. It certainly is not a necessity. Therefore, in considering the requirements as mentioned in the Act, it would seem that the desires of the residents, when considered without any objections, should be controlling. In the absence of statutory inhibitions, the requirements of the neighborhood should be determined by the desires of the inhabitants in a case such as this where they have expressed a desire and, without any opposing voice. When the licensing authority has determined that the statutory requirements exist, and then turns a deaf ear on the desires of a sizeable number of the residents immediately involved and denies the license for the sale of a commodity not under the ban surrounding the sale and dispensation of intoxicating liquor, it would seem to be arbitrary and without good cause. The evidence established the existence of the statutory requirements and the Manager heard no evidence to the contrary.

No doubt the Manager believed he was exercising his powers under his duty to preserve the morals and safety of the public under the police power in refusing the license, due to its close proximity to the public school. If in good faith, and exercised under proper conditions, his action is laudable. However, the legislature, having primary power in such matters, did not see fit to classify the control of malt beverages containing no more than

3.2% alcohol, as an exercise of the police powers of the state for the protection of the welfare, health, peace and morals of the people as it did in the companion act controlling intoxicating liquors.

It appears, from the evidence that in the vicinity involved, a radius of six blocks, there is only one other outlet for 3.2% beer. It may be contended by some that the wording of the section relating to the consideration of the issuance of licenses, where it is provided that the reasonable requirements of the neighborhood and the desires of the inhabitants as evidenced by petitions, remonstrances or otherwise, that the word "otherwise" is an open field to consider many other factors. I believe that the word "otherwise" is so definitely connected with the matter of the subject of requirement that it relates to information in that regard only. It does not include other conditions or factors that might control a determination in the mind of the licensing authority, except as to hard liquor licenses.

While the finding of the trial court was direct that the action of the Manager of Safety was arbitrary and capricious, I am inclined to believe the judgment of the trial court should be sustained on a surer and more reasonable ground, namely, that the license was refused without good cause; therefore, I dissent from the majority opinion.