## No. 18,556.

### Gem Beverage Co. *v.* Edward O. Geer, Manager of Safety, etc.
(334 P. [2d] 744)

Decided January 26, 1959.

Mr. Louis G. Isaacson, Mr. Jay E. Lutz, Mr. James D. McKevitt, for plaintiff in error.

Mr. John C. Banks, City Attorney, Mr. Ty R. Williams, Mr. Herman J. Atencio, Assistants, for defendant in error.

*En Banc.*

Mr. Justice Moore delivered the opinion of the Court.

Gem Beverage Co., to whom we will refer as plaintiff, applied to defendant in error for the issuance of a license to operate a retail liquor store. Following a hearing the request was denied and appropriate proceedings instituted in the district court with the result that the action of defendant in error was upheld and judgment entered accordingly. Plaintiff seeks review by writ of error.

It appears from the evidence produced at the hearing before defendant in error that plaintiff desired to lease 1000 square feet of space in premises described as a warehouse located at 5200 Smith Road in Denver. The entire warehouse had been leased to two corporations who were subletting space to various merchants to be partitioned out of the whole. The liquor store was to be operated as a part of, and in connection with, the business center known as the Government Employees Mutual Store, being operated at the warehouse.

The over-all operation of the Government Employees Mutual, or G.E.M. as it is called, is that portions of the warehouse are leased to various merchandising enterprises; the commodities in which they deal are sold to members of the G.E.M.; five per cent of the gross sales is paid for the use of the space occupied by such merchants; only members of the G.E.M. are permitted to make purchases in this warehouse store and prices prevailing at the G.E.M. store are substantially below prevailing retail prices elsewhere. The condition of eligibility to membership in the G.E.M. is that such member be a city, county, state or federal employee, either active or retired, or a member of a military reserve, active or retired.

The witness Dodge testified that he supervised the circulation of petitions in connection with plaintiff's application for license. He said that 519 persons, representing 63.8% of the residents contacted in the area, and 93.3% of the business owners contacted, were in favor

of issuance of the license. His testimony was that of the 519 persons who signed the petition for the license 140 were members of G.E.M.; that 287 persons contacted in the neighborhood refused to sign the petition and an estimated 415 persons residing in the designated area had not been contacted. It further appears that no other package liquor store existed within the limits of the neighborhood which was fixed as the area affected by the application.

In denying the application for the license defendant in error stated his reasons as follows:

"1. In my opinion, the provisions of the Liquor Code establishing Retail Liquor Store Licenses require that an establishment so licensed be open for general patronage from residents living within the neighborhood in which it is located.

"This type of operation is similar to the operation of liquor licensed clubs, for which the legislature provided, where alcoholic beverages may be served only to members and their guests for consumption on the premises. In failing to provide for a similar type of license for the sale of liquor by the package to a restricted group, we believe that the legislature did not intend to permit such sales.

"2. The issuance of this license would not in my opinion satisfy the needs and requirements of the neighborhood since only those residents who are governmental employees and members of Gem would be permitted to patronize the outlet. There was a failure to show how many, if any, residents of this neighborhood were members, or eligible to become members of this group. Therefore, we can only assume that not all the residents could patronize this outlet and therefore, what, if any, need or requirement did exist could not be satisfied in full and whether it would satisfy a partial need is conjectural."

■ Under applicable statutes and opinions of this court it is settled that there is no inherent right to carry on the business of selling alcoholic beverages. It is a gen-

eral rule that the licensing authority may, in the exercise of his administrative discretion, determine whether in the light of all the evidence and the surrounding facts and circumstances, the granting of a particular license is or is not justified. The licensing authority has the duty and authority to consider the reasonable requirements of the neighborhood and the desires of the inhabitants as evidenced by petition, remonstrances or otherwise.

█ In the final analysis the power of decision rests with the licensing authority. In *MacArthur v. Presto,* 122 Colo. 202, 221 P. (2d) 934, we said:

"The statute requires that the issuance of licenses shall depend on the judgment of the licensing authority and not on that of other citizens."

We further stated in this case: "* * * in our opinion it was the intention of the legislature to vest a wide discretion in local licensing authorities in the issuance of licenses for sale of alcoholic beverages * * *."

All reasonable doubt must be resolved in favor of the findings of the licensing authority and unless it clearly appears that under the whole record the action of that authority was arbitrary and capricious we may not order a different result.

█ It was within the discretion of defendant in error in this action to determine the facts and to conclude that the application should be denied. We find nothing in the record to support a claim that the entry of that order by him was either arbitrary or capricious. The trial court was correct in upholding the denial of the application.

The judgment is affirmed.

MR. JUSTICE SUTTON, MR. JUSTICE HALL and MR. JUSTICE FRANTZ specially concur.

MR. JUSTICE FRANTZ specially concurring:

I, too, vote for affirmance, and in this respect only do I concur with my colleagues. We part company when rea-

sons are given for affirming the judgment of the trial court. We travel divergent and separate routes to reach the same destination. Since I am convinced that the route taken by them is fraught with problems, I am impelled to travel my separate way.

Moreover, I am certain that the licensing authorities will recoil from the foretoken of new responsibilities explicitly and implicitly contained in the majority pronouncement—declaring that the liquor licensing authorities have a wide discretion in an area where, in my view, there is no discretion except to "hew to the line" drawn by the statute. The licensing authorities will boggle at an interpretation of the statute which vests in them a wide discretion in an area where the act is stringently single-purposed.

For too long have the licensing authorities and the courts been beguiled by that seductive formula, "wide discretion." *Van De Vegt v. Commissioners,* 98 Colo. 161, 55 P. (2d) 703; *MacArthur v. Sierota,* 122 Colo. 115, 221 P. (2d) 346; *MacArthur v Martelli,* 127 Colo. 308, 255 P. (2d) 969. In the last cited case it was correctly said that "We have repeatedly held that it was the intention of the legislature to vest *a wide discretion* in local licensing authorities." (Emphasis supplied.) Now the majority of this court would apply the formula, "wide discretion," to a situation in which the only discretion the licensing authority has is to follow the mandate of the law.

Actually the Liquor Code of 1935 is in most respects a rigid, inflexible law, mapping out a narrow course which the licensing authority must pursue in determining applications submitted to it. In fact, discretion is exercisable in a very limited and well-defined area; otherwise, the licensing authority can act only as the law directs. In what does the licencing authority have discretion?

It is within the province of the licensing authority to determine the credibility of witnesses and the weight of the evidence presented, in the hearing on the applica-

tion for a license. *MacArthur v. Sanzalone,* 123 Colo. 166, 225 P. (2d) 1044. A proper determination of these matters binds the courts. By statute discretion is vested in the agency "to consider the reasonable requirements of the neighborhood, the desires of the inhabitants as evidenced by petitions, remonstrances or otherwise." C.R.S. '53, 75-2-9; *Page v. Blunt,* 126 Colo. 324, 248 P. (2d) 1074. Only in the event of an arbitrary or capricious exercise of this discretion concerning needs and desires should a court reverse. *Geer v. Stathopolous,* 135 Colo. 146, 309 P. (2d) 606.

The word "discretion" appears in C.R.S. '53, 75-2-16, and in context it has a very limited scope. Note: "For the purpose of regulating the manufacture and sale of malt, vinous or spirituous liquors, the state licensing authority *in its discretion,* upon application in the prescribed form made to it, may issue and grant to the applicant a license to manufacture, rectify or· sell malt, vinous and spirituous liquors of *the following classes, subject to the provisions and restrictions of manufacture and sale as to manner, place and license fee and as otherwise provided by this article:*

"(1) Manufacturer's liquor license;

"(2) Wholesaler's liquor license;

"(3) Wholesaler's beer license;

"(4) Retail liquor store license;

"(5) Liquor licensed drug store;

"(6) Beer and wine license;

"(7) Hotel and restaurant license;

"(8) Club license." (Emphasis supplied.)

Analyze the foregoing provision as one will, the ultimate construction one is compelled to place upon it is that the licensing authority has the "discretion" of following the mandate of the law; the section bestows upon the licensing authority the faculty of issuing a license pursuant only "to the provisions and restrictions of

manufacture and sale as to manner, place and license fee and as otherwise provided by this article."

The quoted section reiterates the narrow application of the law as evinced in C.R.S. '53, 75-2-2, which provides:

"It shall be lawful to manufacture and sell for beverages * * * malt, vinous or spirituous liquors, subject to the terms, conditions, limitations and restrictions contained in this article."

It is an unlawful act "For any person other than one who holds a license under this article to sell at retail any malt, vinous or spirituous liquors in sealed containers." C.R.S. '53, 75-2-3 (7). Thus, it is obvious that the license which may be issued must be one provided for in the Liquor Code; the operation licensed can only be one fitting the license issued.

The Liquor Code of 1935 is detailed and precise as to the manner, place and license fee and other provisions relating to the issuance of a license. An applicant for a license must be refused such where he intends to sell to persons under twenty-one years of age, to habitual drunkards or to intoxicated people; he must be refused a license where he refuses to pay the required fees; he must be refused a license where it appears that he has been convicted of certain crimes or otherwise is disqualified as a licensee; he must be refused a license where it appears that he will operate his business within a certain distance of a school or a church. These are some of the more familiar restrictions contained in the Liquor Code. It seems clear to me that it cannot be gain-said that the Code contemplates a retail store open to general patronage and making itself available to satisfy the needs of the neighborhood in which it is located. *Maurer v. Boggs,* 103 Colo. 72, 82 P. (2d) 1099; *MacArthur v. Presto,* 122 Colo. 202, 221 P. (2d) 934; *Page v. Blunt,* supra.

Only in relation to clubs does the Liquor Code explicitly provide for sales to particular persons. The li-

cense issued to a club permits sales to members of the club or their guests only. Limitation here solely would carry the implication that the law did not intend limitation as to other licenses. Certain it is, too, that nowhere in the Liquor Code may discretion be spelled out in the matter of issuing a license to a retail liquor store proposing to limit its sales to certain persons.

Once the licensing authority makes a finding supported by evidence, or makes a finding that there was no showing warranting the issuance of a license, its duty is plain and it has no discretion whatsoever; it must apply the law pursuant to the finding. *Page v. Blunt,* supra. Once the licensing authority finds the proposed operation comes within the explicit or implied interdiction of the statute, it has no choice but to deny the application for a license.

In the instant case the licensing authority, supported by evidence, determined that the proposed establishment would not be open to the general patronage of the residents of the neighborhood, but would conduct a business similar in operation to licensed clubs except that the liquor would not be consumed on the premises, and that the operation would not satisfy the needs of the neighborhood, since it would not be open to residents of the neighborhood other than Government employees and members of Gem. Based upon these determinations, it properly denied the application, because that was the only action the licensing authority could take. As I view it, having found these conditions, the licensing authority had no discretion; it could only follow the mandate of the law.

There was substantial evidence presented at the hearing before the Manager to warrant his findings and decision. Once he warrantably determined that the operation more nearly approached that of a club, he no longer was vested with discretion; his duty was plain, solitary and mandatory — he must deny the application. A cor-

428

rect construction of the Liquor Code does not permit such an operation.

MR. JUSTICE SUTTON and MR. JUSTICE HALL join in this specially concurring opinion.