No. 18,202.

BUDDY AND LLOYD'S STORE NO. 1, INC. *v.* CITY COUNCIL,
CITY OF AURORA, ET AL.
(337 P. [2d] 389)

Decided March 30, 1959.

Mr. GEORGE F. BARBARY, for plaintiff in error.

Mr. LEWIS E. EAGAN, for defendants in error.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

PLAINTIFF in error was plaintiff in the trial court and the applicant for a license to dispense 3.2 fermented malt beverage in containers in a grocery and meat market operated by the corporation in the city of Aurora. The City Council of Aurora denied the application.

Plaintiff in error will be referred to as the applicant or the store, and defendants in error as Council.

The store is here by writ of error seeking to reverse a judgment of the district court of Adams County wherein the action of Council in denying the license was upheld.

According to the record certified to the district court in response to proceedings in the nature of certiorari (also the record here), the sentiment of the residents of the neighborhood affected as disclosed by the petitions and remonstrances filed was overwhelmingly in favor of granting the license. The evidence shows that there is not a single outlet in the entire city of Aurora for the dispensing of 3.2 malt beverages. It also shows that although by law the beverage can be dispensed on every day in the week, including Sunday, and within certain broad hours, this particular applicant is a grocery market not open after 8:30 o'clock in the evening and not at all on Sunday. It is not disputed that in all respects the applicant qualifies for the license under the law. The petitions in support of the application show that out of 1972 persons contacted in the immediate neighborhood designated by City Council as the area involved, 1377 or 65.3% signed petitions in favor of issuing the license. In addition persons who did not wish to place their signatures on the petition requesting the license but who had no objection thereto brought the total to 77.1% of the people contacted in the area as not objecting to the license. Separate petitions were circulated among 105 businessmen in the neighborhood and 70% signed the petition and a total of 80% did not object to the issuance of the license. The only remonstrances in opposition to the issuance of the license came from authorized spokesmen of two religious groups who reported the action of

their church boards opposing the issuance of the license, primarily on moral grounds. As one of the spokesmen said, "As far as the needs of the community are concerned, many times the wishes of the people, what they want, does not necessarily mean it's right. However, although many might have indicated their so-called [sic], indicated their desire, to have such an outlet, that does not necessarily mean it's right and the legality does not mean right."

Another petition remonstrating against the application contained 100 signatures and another had thirty names, making a total of 130 persons opposing the granting of the license.

At the conclusion of the hearing, the City Council failed to enter any findings, but summarily denied the application on voice vote. Without approving the action of the licensing authority in failing to enter findings of fact (see *Geer v. Stathopulos,* 135 Colo. 146, 309 P. [2d] 606), we nevertheless deem it futile to remand the cause for the entry of findings since the evidence before the Council as presented in this record could not support a denial of the application. The record shows that at the conclusion of the hearing a member of the Council (not named in the record) made the following motion:

"Member: With all due respect to the people here representing the churches, it seems that in that particular neighborhood, there is *an overwhelming majority that* seems to be for this, if percentages are anything. There is eight and a half for to one against and based upon those standards, why I move that we accept or pass the application and I put it in the form of a motion." (Emphasis supplied.)

The motion was duly seconded and a vote taken. The majority voted against the motion, and the license was denied. In view of the overwhelming evidence before the Council favorable to the granting of the license, and the applicant being fully qualified in all respects, the action of the licensing authority was arbitrary and ca-

pricious and without any basis in the record. As we said in *Geer v. Stathopulos,* supra:

"In view of the evidence before the Manager, was his refusal to grant the license arbitrary and without good cause? * * * In order properly to resolve the problem, the court must determine 'whether or not the decision of the licensing authority was supported by competent evidence.' *MacArthur v. Sanzalone,* 123 Colo. 166, 225 P. (2d) 1044. 'The question now before us is not as to whether there was any evidence to support the decision of the trial court, but rather whether there was any evidence to support the decision of the licensing authority, or whether he acted arbitrarily and capriciously. *MacArthur v. Presto,* 122 Colo. 202, 221 P. (2d) 934.'"

Counsel for the City has cited a number of cases, none of which is controlling in the situation presented here. In all of the cases cited there were ample outlets of the type being sought by the applicant, and this court properly ruled that in such cases the licensing authority's determination that the needs or desires of the inhabitants did not require the additional outlet is not arbitrary. The significance of the action in this case is that the present members of the City Council have, by their action, made a determination that no application for this particular type of outlet would be favorably considered regardless of the person applying or the number of citizens in favor of the outlet. Although Council has not, by resolution or formal action, gone on record as adopting a public policy against 3.2 outlets, we believe the net result of blanket prohibition against such licenses in the city of Aurora is, in fact, a policy prohibited by the ruling in *Maurer v. Boggs,* 103 Colo. 72, 82 P. (2d) 1099, and *Commissioners v. Buckley,* 121 Colo. 108, 213 P. (2d) 608. In *Maurer v. Boggs,* supra, the court said:

"It is clear that prior to plaintiff's application for renewal of his license, and regardless of his fitness to have the license, or the requirements of the neighborhood where he sought the privilege of continuing the sale of

3.2 per cent beer, or the desires of its inhabitants, the city council had determined to reject it. The trial judge referred to that attitude of the council as a 'policy' which the city had 'adopted.' Such predetermination, as we think, does not rise to the dignity of a policy of legal intendment. Without intimating any view of the legal effect thereof in the circumstances here, if so undertaken, for we have none, it is to be remarked that the city had not 'ordained' in statutory manner, and published and made known to the world, that, 'to provide for the safety, preserve the health, promote the prosperity, improve the morals, order, comfort and convenience of such corporation and the inhabitants thereof,' it elected to deny all licenses of the nature here involved for use other than in a restricted area. * * * On the contrary, as witness this matter and others mentioned in the record, it continues to consider and pass upon individual applications for such licenses as presented. If the course pursued by the city council is sound in law, what is denied to Smith today, with legal propriety may be granted to Jones tomorrow, or, indeed, to Smith himself on the same or any day. We are of the view that what the city denominates its 'policy' is but an ephemeron. It is potentially unstable and lacking in legal virtue. Discussion of underlying principles is to be found in *People v. Stanley,* 90 Colo. 315, 9 P. (2d) 288; *City of Central v. Sears,* 2 Colo. 588; *Meyer v. City of Decatur,* 143 Ill. App. 103; *State ex rel. Makris v. Superior Court,* 113 Wash. 296, 193 Pac. 845."

▮ The wide discretion which we have repeatedly held is vested in the licensing authority in granting or denying licenses is not to be construed as authority to establish a local public policy either by express resolution or by secret agreement contrary to the state statutes which have legalized the issuance of this particular type of license. Irrespective of announced policy, the plain fact is that all the citizens of Aurora are required to go outside the city limits for purchase of a lawful

commodity. There could be no greater demonstration of arbitrariness.

The judgment of the district court is reversed and the cause is remanded with directions to order City Council to issue the license herein.

MR. JUSTICE SUTTON does not participate.