No. 18,608.

CITY OF COLORADO SPRINGS, ET AL. *v.* ROBERT G. GRAHAM.
(352 P. [2d] 273)

Decided May 16, 1960.

Mr. FREDERICK T. HENRY, Mr. EDWIN STRAND, for plaintiffs in error.

Mr. DONALD E. LA MORA, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE FRANTZ.

A RULE to show cause issued at the behest of the Dis-

trict Court of El Paso County to the Council of the City of Colorado Springs in proceedings under Rule 106 R.C.P. Colo., instituted by Graham. It pertained to the refusal of the Council to grant the application of Graham for a retail liquor store license. Pursuant to the citation, the Council filed a record of the entire proceedings before it, relating to the application, its consideration and disposition.

After a hearing, the trial court found that Graham's application for the license should have been granted; that the denial of the application was arbitrary, capricious and an abuse of discretion; that the denial was based upon a "pre-established policy" enunciated in a resolution of the Council limiting the issuance of licenses on the basis of one license for a certain number of residents of the City. Consonant with these findings, judgment favorable to Graham and against the City was entered. To reverse this judgment the City is here by writ of error.

In 1941 the Council adopted Resolution No. 3453, and as amended in 1945, the Resolution reads as follows:

"BE IT RESOLVED BY THE CITY COUNCIL OF THE CITY OF COLORADO SPRINGS:

"(a)   That by Resolution of August 12, 1941, the City Council limited the number of liquor outlets on the basis of what was shown by a careful survey to be in accordance with the needs of the community and the ability of the City to properly police and supervise.

"The experience of four years has demonstrated the wisdom of such restrictions and the sufficiency of the ratio of outlets to population to meet the reasonable needs of the City. The Council, therefore, ratifies and confirms the general policy of restrictions set out in its Resolution of August 12, 1941.

"(b)   However, the history of the past four years shows an alarming increase in the number of offenses in this community involving the excessive use of intoxicating liquors, indicating a still further reduction in the

number of public outlets for the sale of intoxicating liquors so as to permit more thorough and careful police surveillance and supervision of such outlets.

"The Council now finds, determines and declares that the public interest requires that the ratio of outlets to population set out in Resolution of August 12, 1941, is hereby amended so that there shall hereafter be granted not to exceed one license for sale of intoxicating liquor for consumption on the premises for each 1800 of population in the City and not to exceed one license for the sale of intoxicating liquors for consumption off the premises for each 2660 of population in the City."

After Graham filed his application, the Council amended the resolution by keeping the outlets to the same number then in existence. This was accomplished by taking the population at the time and dividing it by the number of existing outlets. It was this amended resolution which was retroactively applied in the course of the administrative proceedings for the license.

The evidence before the Council for the most part consisted of the following: a petition signed by 448 persons living within a radius of four and one-half blocks of the proposed outlet who approved or had no objection to the issuance of the license; a showing that the applicant's site was located in a new development, and was approximately two and one-half miles from the nearest retail liquor store; a remonstrance signed by twenty-one persons; and no persons appearing at the hearing to protest the application. Letters from the Chief of Police and the Fire Chief recommended issuance of the license.

The transcripted discussion of the Mayor and members of the Council reveals that four felt there was a definite need for the outlet in the neighborhood, but they decided to abide by the resolution as amended. Their vote, together with three others, was against the granting of the license. The Mayor and another councilman voted for its issuance. Had the four voted in accordance with their expressed convictions, their vote together with the latter

two would have resulted in the issuance of the license.

The following represents the pertinent part of the determination of Graham's application:

"NOW, THEREFORE, BE IT RESOLVED BY THE CITY COUNCIL OF THE CITY OF COLORADO SPRINGS:

"That the City Council, having considered the petitions in favor of or not opposing the application for said liquor license and the petitions opposing the issuance thereof, the desires and sentiments of the inhabitants of the City expressed at the public meeting of November 5, 1957, that under Resolution No. 3453, as amended and further amended on November 5, 1957, the population allocation for liquor licenses is now filled and the policing problems in the outlying areas of the City, the application of Robert G. Graham for a retail liquor store license in the new Audubon Village Shopping Center be and the same hereby is denied."

By C.R.S. '53, 75-2-9, the licensing authority "shall have authority to refuse to issue any licenses provided for in this article for good cause, subject to review by the courts." It continues: "Before granting any license all licensing authorities shall consider the reasonable requirements of the *neighborhood,* the desires of the inhabitants as evidenced by petitions, remonstrances or otherwise, and all other reasonable restrictions which are or may be placed upon the *new district* by the licensing authority of the city and county or the council of the city or town * * * "

Was there present in the record "good cause" for denying the application? So far as the record reveals, a resolution adopted in 1941 found a greater number of offenses involving the excessive use of intoxicating liquors, presenting a problem of police surveillance and supervision of outlets, thereby necessitating licensing on the basis of city-wide population. Upon the basis of experience had under Resolution 3453, adopted in 1941, the Council in 1957 amended the resolution further lim-

iting the ratio of outlets to population. Again, mention was made of policing outlets. That the proposed outlet would present no police problems in the opinion of the Chief of Police apparently had no effect upon the Council. Moreover, the discussion of the Council clearly demonstrated that the license should, and would, have been issued but for the resolution.

There are three reasons why the resolution must be held invalid.

1. The Liquor Code of 1935 contemplates a hearing by the licensing authority on *each* application. Time and place of the hearing is required by C.R.S. '53, 75-2-10. A resolution of the character under consideration regarded in its best light is tantamount to a prejudgment of the application of Graham, or any other applicant. And in its worst light, it permits futile application and a mock hearing, only to meet inevitable denial because of foreordained policy. *Commissioners of Gunnison County v. Buckley,* 121 Colo. 108, 213 P. (2d) 608; *Buddy and Lloyd's Store No. 1 v. City Council,* 139 Colo. 152, 337 P. (2d) 389.

2. Public policy concerning intoxicating liquor is for the law-making power of the state to declare, *Commissioners of Gunnison County v. Buckley,* supra; indubitably, a municipality has no such power, *Maurer v. Boggs, Mayor et al.,* 103 Colo. 72, 82 P. (2d) 1099. "A board of county commissioners is not a legislative body possessing powers to declare a public policy to be enforced within county lines." *Commissioners of Gunnison County v. Buckley,* supra. To establish a settled policy to limit the sale of liquor to a restricted area "was not within any power the council possessed or was authorized to exercise." *Maurer v. Boggs, Mayor,* supra.

3. Applications are considered and determined upon a geographical basis, a neighborhood, and not upon a city-wide population basis. "In permitting such change of location such licensing authorities shall consider the reasonable requirements of the *neighborhood.* * * * "

C.R.S. '53, 75-2-3 (8). "In granting a license the state licensing authority shall consider the reasonable requirements of the *neighborhood* * * * " C.R.S. '53, 75-2-7. "Before granting any license all licensing authorities shall consider the reasonable requirements of the *neighborhood.* * * * " C.R.S. '53, 75-2-9. See *Cloverleaf Kennel Club v. Commissioners,* 136 Colo. 441, 319 P. (2d) 487.

It is our belief that the able trial court determined this matter rightly, and hence its judgment is affirmed.

Mr. Justice Knauss and Mr. Justice Doyle concur.