No. 19,912.

BIG TOP, INCORPORATED *v.* JOHN M. SCHOOLEY, MANAGER
OF SAFETY, ETC., ET AL.
(368 P. [2d] 201)

Decided January 22, 1962.

Messrs. PHELPS and WITTELSHOFER, MR. RICHARD P. HALL, for plaintiff in error.

Mr. ROBERT S. WHAM, City Attorney, Mr. W. KEITH PETERSON, Assistant, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE FRANTZ.

IN this opinion Big Top, Incorporated, will be referred to as "Big Top," John M. Schooley, Manager of Safety and Excise of the City and County of Denver as "Schooley," and the City and County of Denver as "Denver."

Big Top applied for a 3.2% beer license for its premises at 4051 East Yale Avenue in Denver. As the licensing authority, Schooley, without a hearing, denied the application by letter, wherein he advised Big Top, as the basis for denial of a hearing and of a license, that it presently had a 3.2% beer license at another location in Denver and that, under a Denver ordinance, no one could hold more than one 3.2% beer license in the city.

In a complaint seeking declaratory and mandatory relief under Rules 57 and 106 respectively of R.C.P. Colo., Big Top launched a two-pronged assault upon the ordinance: (1) that it was void because wholly outside the scope of the regulatory authority reposed in local licensing authorities by the statute, and (2) that the ordinance was not adopted by the "licensing authority" of Denver as required by the statute.

The trial court held contrary to the contentions of Big Top and determined that the ordinance was a valid exer-

cise of legislative authority by the Council of Denver pursuant to which Schooley correctly ruled. Convinced that its attack upon the ordinance was well-founded and that the enforcement of such ordinance adversely affected its right to a hearing and to a license, should it satisfy the requirements of the law as to qualifications and other conditions, Big Top is before us on writ of error, renewing its attack on the ordinance.

Article XXII of the Constitution of Colorado was adopted on November 8, 1932, and became effective "from and after July 1st, 1933." At the 1933 session the legislature enacted "An Act Regulating the Sale and Manufacture of Beer," which was approved April 5, 1933. S.L. 1933, Ch. 45. At a special session for the same year the legislature repealed Chapter 45, and passed separate statutes, one "An Act Regulating the Sale and Manufacture of Beer and Wine Containing not more than 3.2% of Alcohol by Weight," Ex. Sess. 1933, Ch. 5, and the other, "An Act Regulating the Manufacture and Sale of Alcoholic Liquor Containing more than 3.2% of Alcohol by Weight," and so forth. Idem, Ch. 12. Both acts were approved on August 22, 1933.

It will be noted that the legislature drew a line at "3.2% of alcohol by weight." Beer and wine having 3.2% or less of alcohol by weight were covered by Chapter 5; beverages containing in excess of 3.2% of alcohol by weight, by Chapter 12. Chapter 5 was amended in 1935, and as amended substantially is the present "fermented malt beverages" law. C.R.S. '53, 75-1. The amendment specifically ordained that "such fermented malt beverage is hereby declared to be non-intoxicating." S.L., 1935, Ch. 82, §2. This specific declaration was deleted by an amendment in 1945. S.L. 1945, Ch. 154, §2.

That which was non-intoxicating as a matter of law by reason of legislative prescription in 1935 now must be resolved as a question of fact by virtue of the 1945 amendment. *Houpt v. Milliken,* 128 Colo. 147, 260 P. (2d) 735; *Gettman v. Com'rs,* 122 Colo. 185, 221 P.

(2d) 363. There is no longer any doubt regarding the competence of the legislature within reasonable limits to draw the line at which a beverage becomes intoxicating. Such action represents a reasonable exercise of legislative authority under Article XXII of the Constitution. *Gettman v. Com'rs*, supra.

█ It is for this very reason that "fermented malt beverages" may not be, as the trial court erroneously said they were, a matter of local and municipal concern, and hence the subject of councilmanic action. An additional reason for holding said beverages to be of statewide concern is the pronouncement that legislation in this area represents the exercise of the state's police power. *MacArthur v. Sierota*, 122 Colo. 115, 221 P. (2d) 346.

Denver contends that the restriction of one license to a person to sell fermented malt beverages is regulatory and inoffensive to C.R.S. '53, 75-1. Reliance in particular is placed upon 75-1-7, which provides:

"The licensing authorities having the power to issue licenses under this article shall likewise have the power to make such *reasonable rules and regulations with respect to the sale of fermented malt beverages* as they may deem proper, not inconsistent with the provisions of this article." (Emphasis supplied.)

C.R.S. '53, 75-1 relates to fermented malt beverages and C.R.S. '53, 75-2 has to do with malt, vinous or spirituous liquors. Their history is one of hand in hand existence. Thus viewed, it becomes important to note that 75-2 provides for one license to a person, whereas 75-1 does not contain such a limitation — indeed, suggests a construction that more than one license may be held by a licensee.

█ These statutes cover cognate subjects, and the parallelism of their enactment and development makes clear the legislative intent that multiple licenses for fermented malt beverages of not more than 3.2% may be issued to a licensee. The express limitation of one li-

cense for one licensee as to malt, vinous and spirituous liquors, without a like limitation as to such fermented malt beverages, indicates an intent that no limitation as to the latter was ordained. *Fergus Motor Co. v. Sorenson,* 73 Mont. 122, 235 Pac. 422; *Blevins v. W. A. Graham Co.,* 72 Okla. 308, 182 Pac. 247.

■ May Denver under the guise of regulation prohibit the issuance of more than one license where the General Assembly, by whom delegation to regulate was made, has clearly indicated that a licensee may be issued multiple licenses? There are three reasons which compel a negative answer.

1. Section 75-1-7 empowers the licensing authority "to make reasonable rules and regulations with respect to the sale of fermented malt beverages" so long as they are "not inconsistent with the provisions of this article." Delegation of regulatory power, to be valid, must set up a framework of standards. Such standards effectuate the worthy purpose of uniformity.

As we view it, the licensing authorities of the state have authority to issue a number of licenses for the sale of fermented malt beverages to a licensee. Such authority is granted by the legislature, which also empowers licensing authorities to adopt reasonable regulations with respect to the sale of these beverages not inconsistent with the delegated power. Here is authority delegated to the licensing authority and the compass for its proper exercise.

Denver acted in manner inconsistent with the authority delegated to it in enacting an ordinance which limited to a licensee one license for the sale of fermented malt beverages.

■ 2. The power of an officer or board or city to administer a state statute and to prescribe rules and regulations to that end is not the power to make law, but the power to adopt regulations to carry into effect the will of the General Assembly as expressed by the statute.

In such circumstances the delegator establishes policy

and the delegate has the duty of carrying it into effect. It is not the function of the delegate to modify or contravene the policy established by the delegator. *Sierota v. Scott,* 143 Colo. 248, 352 P. (2d) 671; *Colorado Springs v. Graham,* 143 Colo. 97, 352 P. (2d) 273.

Denver attempted to make law regarding fermented malt beverages which prohibited, in an area where the state permitted, a license, and in so doing exceeded its delegated power to adopt reasonable regulations consistent with the statutes. Its effort in this respect was a nullity.

3. There is a basic distinction between the law-making function and the power to adopt regulations pursuant to an enacted law. The first involves the legislative authority, the latter is actually administrative in character. When one is vested with authority to administer a statute and empowered to adopt regulations to enforce the statute, regulation must be within the perimeter of the statute. In attempting to regulate in accordance with the statute, regulation may not supersede the statute. *Sierota v. Scott,* supra.

Denver under the guise of regulation indulged in law-making. Its source of power to regulate was the statute. It prohibited where it could only regulate, and as a consequence it acted ultra vires.

The judgment is reversed.

MR. CHIEF JUSTICE DAY and MR. JUSTICE MOORE concur.