J. Richard Barnes, C.L.U. Commissioner of Insurance 106 State Office Building Denver, CO 80203
Dear Commissioner Barnes:
On behalf of the Insurance Board (the "board"), you ask whether the board can legally amend Insurance Division regulation 72-3 (relative to the business of title insurance) to prohibit title insurance producers (generally, real estate developers or lenders or their representatives) from having virtually any financial interest in title entities (title insurers or agents) in certain situations.
The text of the board's proposed amendment to the title insurance regulation is attached.
QUESTION PRESENTED AND CONCLUSION
Specifically, you inquire whether the board has the authority under C.R.S. 1973, 10-3-1104, to prohibit a title insurance producer from owning a financial interest of 1 percent or more in a title entity where it appears that a substantial factor in the producer's having such interest is an expectation that it will profit from "controlled business" (business referred to the entity by producers having financial interests in the entity). The proposed amendment establishes a presumption that such expectation is a substantial factor in having that financial interest when controlled business accounts for more than one-third of the title entity's gross operating revenues.
 The board does not have the authority to adopt the proposed amendment to existing Insurance Division regulation 72-3.
ANALYSIS
C.R.S. 1973, 10-3-1104, as amended, defines certain unfair methods of competition and certain unfair or deceptive acts or practices in the business of insurance, including title insurance. Subsection 10-3-1104(1)(g) sets forth a legislative prohibition against certain types of rebates as unfair methods of competition and unfair or deceptive acts or practices:
 10-3-1104(1)(g) Rebates: Except as otherwise expressly provided by law, knowingly permitting, or offering to make, or making any contract of insurance or agreement as to such contract, other than as plainly expressed in the insurance contract issued thereon, or paying, or allowing, or giving, or offering to pay, allow, or give, directly or indirectly, as inducement to such insurance or annuity, any rebate of premiums payable on the contract, or any special favor or advantage in the dividends or other benefits thereon, or any valuable consideration or inducement whatever not specified in the contract; or giving, or selling, or purchasing, or offering to give, sell, or purchase, as inducement to such insurance contract or annuity or in connection therewith any stocks, bonds, or other securities of any insurance company or other corporation, association, or partnership, or any dividends or profits accrued thereon, or anything of value whatsoever not specified in the contract;
It is readily apparent that the anti-rebate proscriptions of subsection 10-3-1104(1)(g) do not expressly prohibit a title insurance producer from buying, organizing or otherwise lawfully obtaining any particular ownership interest in a title insurer or agent. However, under C.R.S. 1973, 10-3-1110, the Insurance Commissioner (the "commissioner") may promulgate such reasonable rules and regulations as are necessary to identify particular methods of competition or acts or practices which are defined by section 10-3-1104 as being unfair or deceptive. Thus, the board's authority to adopt the proposed amendment depends upon your legal ability as commissioner to identify the ownership interest in question as an unfair method of competition or an unfair or deceptive act or practice prohibited by the statute.
In this regard, an administrative agency to which rulemaking authority has been delegated only has the power to determine operable facts and situations to which broad legal principles established by the legislature apply. Pierce v. IndustrialCommission, 195 Colo. 10, 576 P.2d 1012, 1013 (1978). Such an agency does not have the power to make new law; it only has discretion in the execution of existing law. Id. at 1014. Accordingly, an administrative rule which attempts to broaden a statute beyond the scope intended by the legislature is invalid. Cohen v. Dept. of Revenue, 197 Colo. 385,593 P.2d 957 (1979).
The anti-rebate proscriptions of subsection 10-3-1104(1)(g) constitute declared legislative standards. Even interpreted most broadly, this subsection only prohibits procurement of a particular insurance contract on the basis of improper and noncompetitive inducements, such as the giving of pecuniary value therefor, and secret agreements not set forth in the particular insurance contract.
However, the mere fact that a title insurance producer has a financial interest of more than 1 percent in a title entity which obtains less than two-thirds of its revenue from noncontrolled business simply does not necessarily mean that: (i)procurement of a particular insurance contract is even involved; or (ii) the financial interest constitutes an inducement for the producer to place a particular insurance contract with the entity; or (iii) there exists an agreement (i.e, to so place the contract) other than that plainly expressed in the particular insurance contract itself. In brief, then, the proposed amendment to the regulation exceeds the scope of the statute.
Notwithstanding the foregoing, note should be taken of C.R.S. 1973, 10-2-201 et seq., which is concerned with the licensing of insurance agents, brokers, and representatives. Subsection 10-2-205(1) indicates that such licenses are not to be used to obtain premium rebates in the form of commissions or other compensation for insurance solicited or procured by or through licensees on their own interests. More specifically, subsection 10-2-205(2) prohibits the granting, renewing, or continuing of any license used for the purpose of writing "controlled business."
In this context, "controlled business" is defined by subsection 10-2-205(2)(a) and (b) as:
 (a) Insurance written on the interests of the licensee or those of his immediate family or of his employer; or
 (b) Insurance or annuity contracts covering the licensee or members of his immediate family, or a corporation, association, or partnership, or the officers, directors, substantial stockholders, partners, or employees of such a corporation, association, or partnership, of which he or a member of his immediate family is an officer, director, substantial stockholder, partner, associate, or employee; except that nothing in this paragraph (b) shall apply to insurance written in connection with credit transactions.
Additionally, subsection 10-2-205(3) specifies that a license isdeemed to be used for the purpose of writing controlled business if, during any twelve-month period, more than 25 percent of the licensee's aggregate commissions are earned from controlled business. Finally, section 10-2-220 delegates authority to the commissioner empowering him to make rules implementing the provisions of section 10-2-205.
SUMMARY
In light of the preceding analysis, then, rulemaking authority does exist under the statutory agent, broker, and representative licensing provisions as well as under the unfair methods of competition and unfair or deceptive acts or practices statute. Such authority could be utilized to control receipt of: (i) commissions or other compensation for the writing of controlled insurance business as defined by the legislature; and (ii) improper or secret rebates with respect to specific insurance contracts. Neither statute, however, can be said to encompass the broad prohibition of financial interests contained in the proposed amended regulation. Accordingly, the board cannot adopt the proposed controlled business amendment in the absence of specific legislative authorization. See BigTop v. Schooley, 149 Colo. 116, 368 P.2d 201 (1962).
Very truly yours,
 J.D. MacFARLANE Attorney General
INSURANCE
RULES AND REGULATIONS
ANTITRUST
STATUTES
C.R.S. 1973, 10-3-1104
REGULATORY AGENCIES, DEPT.
Insurance, Div. of
The Insurance Board does not have authority under C.R.S. 1973,10-3-1104 to adopt a regulation prohibiting a title insurance producer from owning a financial interest in a title entity where it appears that a substantial factor in the producers having such interest is an expectation that it will profit from "controlled business." The proposed regulation, by establishing a presumption of unlawful rebate activity from the fact of the financial interest, exceeds the scope of the law under which it is promulgated.